

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-15

| | |
|---|---|
| ASHLEY BASHAM<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered** April 27, 2016<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46JV-13-131-2]<br><br><br>HONORABLE BRENT HALTOM, JUDGE<br><br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Ashley Basham appeals from the October 13, 2015 order of the Miller County Circuit Court terminating her parental rights to her son, D.B.[1] Her sole argument on appeal is a challenge to the sufficiency of the evidence supporting the trial court's finding of potential harm. We affirm.

The relevant facts are these. On June 28, 2013, the Arkansas Department of Human Services (DHS) took emergency custody of four-year-old D.B. after the Arkansas State Police executed a search warrant on the home of D.B.'s father, Charles Basham. Charles was arrested after admitting methamphetamine use and testing positive for methamphetamine and

---

[1] This is the second time this case has been before us. In the previous case, we reversed the decision terminating Ashley's parental rights because the trial court failed to determine whether she was indigent and entitled to the appointment of counsel in violation of Arkansas Code Annotated section 9-27-316(h)(1)(D) (Repl. 2015). *Basham v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 243, 459 S.W.3d 824.

opiates.[2] Ashley was not present because she was incarcerated in Texas at the time the warrant was executed. While executing the warrant, the state police observed that D.B. and another child were present in the home where methamphetamine and a firearm were discovered. Additionally, the home was in disarray, there was limited food, and there was no working toilet.

Based on the conditions of the home and the incarceration of the parents, D.B. was subsequently adjudicated dependent-neglected. Because Ashley was incarcerated, she was not present at the adjudication hearing. Ashley, who had recently been released from custody, did make an appearance at a November 2013 review hearing. However, Ashley was not present at the next review hearing in February 2014.[3] Eventually, DHS sought to terminate the rights of both Charles and Ashley. The trial court ultimately granted the petition. Ashley appealed, and this court reversed, finding that she was entitled to, but had not been appointed, counsel and remanded the matter for further proceedings.

On remand, DHS again filed a petition to terminate Ashley's parental rights. After hearing all the evidence, the trial court entered an order terminating Ashley's parental rights. The trial court found that statutory grounds for termination existed and that it was in the best interest of the child to terminate Ashley's parental rights. In doing so, the court found that Ashley's testimony was not credible, that the adoption specialist's testimony as to adoptability

---

[2] Charles remained incarcerated throughout the pendency of the case, and his rights were ultimately terminated. The termination was upheld by this court in *Basham v. Ark. Dep't of Human Servs.*, *supra*. He is not a party to this appeal.

[3] Ashley was once again not present due to incarceration.

was credible, and that Ashley's continuous bad decisions had placed D.B. at a risk of potential harm if he were returned to her.  Ashley appeals this termination decision.

Termination-of-parental-rights cases are reviewed de novo. *Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483.  A trial court's termination of parental rights must be based on factual findings proven by clear and convincing evidence. *Ullom v. Ark. Dep't of Human Servs.*, 67 Ark. App. 77, 992 S.W.2d 813 (1999). We will not reverse a trial court's ruling as to termination unless it is clearly erroneous.  *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001). Under Arkansas law, in order to terminate parental rights, a trial court must find both that at least one statutory ground for termination has been established and that termination would be in the child's best interest. *Meriweather v. Ark. Dep't of Human Servs.*, 98 Ark. App. 328, 332, 255 S.W.3d 505, 507 (2007).  In determining the best interest of the child, the court must take into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by return to custody of the parent.  Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, Ashley challenges only the trial court's finding of potential harm.  Ashley contends that her actions were not the cause of D.B.'s removal from the home.  She admits that she was absent due to incarceration; however, she asserts that, while incarcerated, she completed numerous classes to improve her parenting skills and ability to care for D.B.  Also, she highlights that when she was not incarcerated for a period of time, she was able to maintain appropriate housing and employment, pass random drug screens, and visit with D.B. There was no evidence that any of her visits with D.B. were inappropriate.  In fact, she

3

contends that, other than her absence due to incarceration, DHS presented no evidence that she was ever an inappropriate parent to D.B. Consequently, she argues that the evidence does not support the court's conclusion of potential harm.

In considering potential harm caused by returning the child to the parent, the trial court is not required to find that actual harm would result or affirmatively identify a potential harm. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stable, permanent home. *Collins v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 90.

Here, the evidence revealed that at the time of the hearing, Ashley had been incarcerated for approximately one-third of the child's life. Her own testimony proves that she was currently incarcerated for prescription fraud, that she had previously been released for a short period of time but, because of the stress of everything, she ended up back in prison, and that her ultimate release date was not until 2018. At that time, she will have been incarcerated for approximately one-half of the child's life. The intent of our termination statute is to provide permanency in a juvenile's life in all circumstances where return to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3). Looking at the testimony overall, the potential harm to the child if parental rights were not terminated is clear: the child could conceivably remain in DHS's custody for up to three years waiting

for Ashley to be released from incarceration and to satisfactorily complete the case plan. D.B., who has already been in DHS's custody for over two years, would be required to linger in limbo until Ashley is released from jail and gets her act together. This kind of wait-and-see is the definition of the instability that the termination statute is intended to protect children from. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, at 11, 435 S.W.3d 495, 502.

Furthermore, the record reflects that Ashley failed to adequately keep in contact with the child and made no real effort to maintain a significant parent-child relationship with the child. While Ashley claimed that she sent gifts and cards to the child through her mother, there is no evidence that she made any further effort to contact DHS or ensure that the items were delivered to the child. Moreover, the trial court did not find her testimony to be credible. This evidence of potential harm, combined with the child's adoptability, supports the circuit court's ruling that termination of Ashley's parental rights was in the child's best interest.

Affirmed.

ABRAMSON and HOOFMAN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.