

Cite as 2017 Ark. App. 252

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-16-1143

| | |
|---|---|
| ANGEL SIMS DUNCAN | **Opinion Delivered:** April 26, 2017 |
| APPELLANT | |
| | APPEAL FROM THE SEBASTIAN |
| V. | COUNTY CIRCUIT COURT, |
| | FORT SMITH DISTRICT |
| | [NO. 66JV-14-714] |
| ARKANSAS DEPARTMENT OF | |
| HUMAN SERVICES AND MINOR | |
| CHILDREN | |
| APPELLEES | HONORABLE LEIGH ZUERKER, |
| | JUDGE |
| | |
| | AFFIRMED |

## BART F. VIRDEN, Judge

The Sebastian County Circuit Court terminated the parental rights of appellant Angel Sims Duncan to her two children, N.D. (DOB: 9-23-2014) and Z.D. (DOB: 12-23-2015). Duncan challenges the statutory grounds supporting termination and the trial court's best-interest finding. We affirm.

### I. *Procedural History*

On December 17, 2014, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect as to N.D. In an affidavit attached to the petition, family service worker Courtnee Boerjan attested that a protective-services case had been opened when N.D. tested positive for THC at the time of her birth. Duncan initially tested positive for only THC,[1] but subsequent tests were positive for other illicit

---

[1]THC, or tetrahydrocannabinol, is the active chemical in marijuana.

SLIP OPINION

drugs, including amphetamines, methamphetamine, and phencyclidine (PCP). An ex parte order for emergency custody was entered, and the trial court later found that probable cause existed for issuance of the emergency order.

In an adjudication order entered April 24, 2015, the trial court found that N.D. was dependent-neglected due to Duncan's drug abuse. The goal was reunification, and the trial court ordered Duncan to comply with several conditions, including recommended drug treatment. In a review order dated September 11, 2015, the trial court found that Duncan was in her third drug-treatment program and had only four negative drug screens since the case was opened. The trial court also noted that Duncan was pregnant and due to give birth in December 2015.

When Z.D. was born, DHS took a seventy-two-hour hold on him. On December 29, 2015, DHS filed a petition for emergency custody and dependency-neglect as to Z.D. In an affidavit attached to the petition, family service worker Natosha Mantooth attested that Duncan had tested positive for methamphetamine while in residential treatment on September 23, 2015, and that Duncan reported that she had relapsed in November 2015 while pregnant by taking Xanax not prescribed to her. An ex parte emergency custody order was entered. The trial court subsequently found probable cause for issuance of the order.

On January 7, 2016, the trial court entered a permanency-planning order pertaining to N.D. The trial court found that DHS had made reasonable efforts to provide family services to achieve the goal of reunification. The trial court noted that Duncan had complied with several case-plan goals and court orders. She was further ordered, among other things,

to submit to random drug screens and hair-follicle tests, complete drug treatment, and attend Narcotics/Alcoholics Anonymous (NA/AA) meetings at least twice per week.

On April 7, 2016, Z.D. was adjudicated dependent-neglected due to Duncan's stipulation of parental unfitness and inadequate supervision due to her substance-abuse issues. A fifteen-month review order was entered the same day indicating that Duncan had only partially complied with the case plan. She was again ordered to complete a drug-and-alcohol assessment and follow the recommendations.

DHS filed a petition for termination of parental rights on May 23, 2016, alleging grounds under Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2015), including (i)*(a)* (twelve-month/failure to remedy), (ii)*(a)* (failure to provide significant material support), (vii)*(a)* (other subsequent factors or issues), and (ix) *(a)(3)* (aggravated circumstances). A hearing on DHS's petition was held July 8, 2016.

## II.  *Termination Hearing*

Duncan testified that she was twenty-nine years old and that she had been dealing with drug addiction since she was fifteen. She said that the longest period that she had remained sober was three years. Duncan stated that she regretted "shooting up" with drugs throughout her pregnancy with N.D.

Duncan stated that she is currently in drug treatment and attends group and individual counseling twice per week. She said that she last used THC at the end of March 2016. She claimed that she had remained "clean" from September through December 2015 but had relapsed on "weed" and methamphetamine after she had given birth to Z.D. Duncan testified that she did not think she would have relapsed had she been given the opportunity

to take Z.D. home with her. Duncan said that if she were drug tested that day, the result would be negative. She asserted that her drug use was not a problem.

As for her employment, Duncan said that she was still "fighting" for disability benefits due to her diagnoses of post-traumatic stress disorder, anxiety, and a personality disorder. Duncan stated that she had acquired a two-bedroom home through HUD (Housing and Urban Development Department) and that she now has transportation because her stepfather had given her a van. Duncan said, "I just want to be a mother to my kids, something that I didn't have." She asked for more time to reunify with N.D. and Z.D.

Mantooth, a DHS family service worker, testified that Duncan was a no-show for her hair-follicle tests on January 15, 2015; June 5, 2015; February 9, 2016; April 27, 2016; and June 30, 2016. She said that Duncan's last positive drug screen for THC was on June 14, 2016. Before that, she was positive for amphetamines on April 8, 2016. On March 29, 2016, Duncan was positive for methamphetamine and amphetamines.

In describing Duncan's drug-treatment history, Mantooth testified that Duncan initially had an assessment with Horizon on January 2, 2015, but that she did not complete that program. She entered Gateway around May 21, 2015, but did not comply due to behavioral issues. Duncan went to Decision Point on August 22, 2015, and was discharged due to smoking or being caught with cigarettes. She entered Gateway again on September 22, 2015, but left on October 15, 2015, due to behavioral issues. Mantooth said that Duncan is currently enrolled at Horizon.

Mantooth testified that she was concerned about the inconsistency of Duncan's behavior and that she did not think N.D. should wait any longer to see whether Duncan's

fifth attempt at drug treatment would be successful. Mantooth further stated that, if Duncan could not prove her sobriety to regain custody of N.D., DHS should not be required to "start that all over again" to see whether Duncan could maintain her sobriety for Z.D.

Mantooth stated that, regarding Z.D.'s father, Duncan had told her that she was aware that he had been charged with promoting prostitution and that she had worked for him. Mantooth took that to mean that Z.D.'s father was Duncan's "pimp." Earlier, Duncan had testified that she was aware that Z.D.'s father "went down" for child endangerment in 2013 but that she did not have any concerns with his being awarded custody of Z.D. because, when he interacts with his other kids, "there is no doubt that he's a good dad."

According to Mantooth, while Duncan was excited to see N.D. at visitation, N.D. did not want to go to her mother and at times cried and "[threw] a fit" until the foster parents stepped in to calm her. Mantooth said that "everything about [Duncan's children] makes them adoptable." She described the children as "always happy"; she pointed out that the children were young; and she said that they had no medical or emotional issues that would prevent their adoption. Mantooth testified that the children are currently in a placement where the family has expressed interest in adopting them.

Rebecca Hamilton, foster parent to N.D. and Z.D., testified that the children are thriving in her home. She was concerned, however, about visitation between Duncan and N.D. She said that N.D. had begun pulling out chunks of her hair before and after visitation. Hamilton said that, after N.D.'s visits with Duncan had been discontinued, N.D. stopped pulling out her hair.

### III. *Order Terminating Parental Rights*

The trial court found grounds for termination of Duncan's parental rights under Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* and 9-27-341(b)(3)(B)(ix)*(a)(3)(B)*. Specifically, the trial court found that N.D. had been adjudicated dependent-neglected due to the mother's substance-abuse issues and had been out of Duncan's custody for over a year.[2] The trial court found that DHS had offered numerous services to achieve reunification. The trial court further found that Duncan had recently acquired stable housing through HUD and had completed parenting classes but that she had not obtained and maintained employment. The trial court found that, although Duncan had complied by submitting to drug tests, she had continued to test positive "for methamphetamines, among other things," and had not completed drug treatment. The trial court concluded that Duncan was still in no condition to have the children returned to her.

The trial court also found aggravated circumstances in that there was little likelihood that additional services would result in successful reunification between Duncan and her children. The trial court found that DHS had provided many services, including case management, clothing vouchers, visitation, PACE (Project for Adolescent and Child Evaluations), referrals for parenting classes, hair-follicle testing, counseling, random drug screens, inpatient drug treatment, and transportation. The trial court noted that Duncan had been receiving services over the course of almost nineteen months but had failed to remedy her situation. The trial court concluded that there was little likelihood that offering

---

[2]Although the trial court found that the twelve-month/failure-to-remedy ground also applied to Z.D., we agree with the State's concession that this ground could not have applied to Z.D. in that he was only six months old at the time of the hearing.

additional services would result in reunification in a timeframe consistent with the children's ages and developmental needs.

Finally, the trial court found that it was in the children's best interest to terminate Duncan's parental rights. The trial court specifically found that the children are adoptable and that the children would be at risk of serious harm if returned to Duncan because she still has substance-abuse issues after numerous attempts at drug treatment.

IV. *Standard of Review*

Termination-of-parental-rights cases are reviewed de novo. *Tillman v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 119. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.* The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted, and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-

341(b)(3)(A)(i) & (ii). The trial court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(B). Proof of only one statutory ground is sufficient to terminate parental rights. *Tillman, supra.* Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

V.  *Discussion*

A.  Statutory Grounds

As for N.D., Duncan argues that, although N.D. tested positive at birth for THC, she was not removed from the home because of Duncan's THC use; rather, she was removed when Duncan tested positive for methamphetamine. Duncan contends that, at the time of the termination hearing, she had remedied her use of methamphetamine in that she had last tested positive for that drug in March 2016. Duncan contends that the trial court erred in not considering evidence of her recent sobriety and by speculating that she would relapse in the future.

N.D. was removed from Duncan's care in December 2014 due to Duncan's illegal drug abuse in general. The termination hearing was held in July 2016. During the time that N.D. was out of Duncan's custody—over eighteen months—Duncan attempted drug treatment unsuccessfully four times. At the time of the hearing, Duncan was making her fifth attempt to complete drug treatment. Even though Duncan had received some drug treatment and was attending NA/AA meetings and counseling, she continued to test positive for illegal drugs, including a positive test for THC only *one month* prior to the termination

hearing. We concede that Duncan had several negative drug tests just prior to the termination hearing, but evidence that a parent begins to make improvement as termination becomes more imminent will not outweigh other evidence demonstrating a failure to comply and to remedy the situation that caused a child to be removed in the first place. *See, e.g.*, *Tillman*, *supra*. We cannot say that the trial court clearly erred in finding this ground as to N.D.

Duncan contends that there was no evidence to support the aggravated-circumstances ground, which applied to both children. Duncan asserts that the evidence showed that she had achieved sobriety and was continuing to work on maintaining that sobriety. Duncan argues that, in the rush to achieve permanency for juveniles, the ability of parents like Duncan to demonstrate sobriety and stability is often inhibited. She argues that it should not be enough to say that the possibility of another relapse proved this ground.

There must be more than a mere prediction or expectation on the part of the trial court that additional reunification services will not result in successful reunification. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006). After Z.D. was born, there were eleven positive drug screens between January 4, 2016, and April 8, 2016. After that, Duncan tested negative from April 14 through June 10. On June 14, 2016, however, after DHS had filed its petition to terminate her parental rights, Duncan tested positive for THC. The trial court was apparently not convinced that Duncan had "achieved sobriety" given that she could stay sober for only approximately two months at a time. Duncan had failed in her first four attempts to complete drug treatment for reasons that appeared to be within her control. We cannot say that the trial court clearly erred in

determining that more services, given her history of failure with drug treatment, would result in successful reunification with both N.D. and Z.D.

## B. Best-Interest Determination

Duncan does not challenge the adoptability finding of the best-interest analysis; instead, she contends that finding potential harm based on the mere possibility of a future relapse is too speculative to support such a finding.

Potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms. *Tillman, supra.* A parent's past behavior is often a good indicator of future behavior. *Shaffer v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 208, 489 S.W.3d 182. There are many cases that stand for the proposition that continued drug use by a parent demonstrates potential harm. *Jones v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 615, 508 S.W.3d 897; *Jackson v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 440, 503 S.W.3d 122; *Tillman, supra*; *Allen v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 288, 384 S.W.3d 7. We cannot say that the trial court clearly erred in determining that termination of Duncan's parental rights was in the children's best interest.

Affirmed.

HARRISON and GLOVER, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.