

# ARKANSAS COURT OF APPEALS

### DIVISION III

**No.** CV–17–74

| | |
|---|---|
| BRITNEY SMITH<br><br>APPELLANT | **OPINION DELIVERED:** JUNE 7, 2017 |
| V. | APPEAL FROM THE MADISON COUNTY CIRCUIT COURT [NO. 44JV-15-43-3] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | HONORABLE JOHN C. THREET, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Britney Smith appeals the October 19, 2016 order of the Madison County Circuit Court terminating her parental rights to her minor child, A.S. She argues that the circuit court erred in granting the termination-of-parental-rights (TPR) petition because appellee Arkansas Department of Human Services (ADHS) failed to present sufficient evidence that TPR was in the child's best interest, specifically challenging the potential-harm element of the best-interest analysis. We affirm.

### I. *Facts*

On August 17, 2015, ADHS went to the home of appellant and her husband, Fletcher Smith,[1] to investigate allegations of drug use, environmental neglect, and striking a child with a closed fist. When arriving at the home, ADHS encountered the parents and

---

[1]Smith did not appeal and is not a party to this action.

A.S. The ADHS worker observed that A.S. did not have any bruises but that the home was dirty. The parents were also unable to produce samples for the ADHS worker to perform drug tests. While the ADHS worker was at the home, the maternal grandmother and great-grandmother arrived and removed A.S. from the home over the objection of the ADHS worker. The ADHS worker, with the assistance of the police, was able to retrieve A.S. ADHS exercised a seventy-two-hour hold on A.S. based on the family's prior history with ADHS, the family's refusal to comply with the investigation, and the family members' absconding with A.S.

On August 20, 2015, ADHS filed a petition for emergency custody and dependency-neglect, alleging detailed concerns of drug use, environmental neglect, and that A.S. had been hit with a closed fist. Also on August 20, 2015, the circuit court entered an ex parte order for emergency custody granting ADHS custody of A.S. A probable-cause hearing was held on August 25, 2015, after which the circuit court entered an order finding that probable cause existed, based on (1) the home being unsafe, (2) the parents refusing drug screens, (3) a family member fleeing with A.S., and (4) the extensive history between ADHS and the family, such that continued custody of A.S. should remain with ADHS. The circuit court entered a supervised visitation schedule and ordered certain services. Specifically, appellant was ordered to cooperate with ADHS; call the caseworker once a week; attend the case-plan staffing; keep ADHS informed of her contact information; refrain from using illegal drugs; submit to random weekly drug screens; maintain stable, clean, and safe housing; maintain stable, adequate employment; demonstrate an ability to keep the juvenile safe; submit to a hair-follicle drug screen; and follow the case plan and court orders.

A court report was submitted on September 18, 2015, that detailed that A.S. was healthy and "on track for his age." Following the adjudication hearing held on September 21, 2015, the circuit court entered an order adjudicating A.S. dependent-neglected based on the finding that A.S. was at a risk of harm due to neglect and parental unfitness and finding that the previous allegations in the petition were true and correct—the poor environmental conditions of the home, the failure of the parents to submit to a drug screen during the investigation, and the great-grandmother running off with A.S. The circuit court noted that since A.S. had been removed, appellant had failed a drug screen for methamphetamine and amphetamine and that they had moved and reportedly were staying with friends in Fayetteville. Appellant had attended only two of four scheduled visits and had not submitted to weekly drug screens. The goal of the case was set for reunification, and A.S. was placed in the home of relatives at the time of the hearing. The circuit court continued its prior orders, adding that appellant was to participate in individual counseling and complete twenty hours of parenting classes.

The circuit court found that appellant had complied with the prior orders from the probable-cause hearing in that she was working, that she had attended the case-plan staffing, and that she had scheduled an appointment with Ozark Guidance Center so that she could resume her mental-health medications. ADHS had made referrals for individual counseling and hair-follicle exams but had not yet received approval for those services. The circuit court allowed visitation for the extended family.

A Court Appointed Special Advocate (CASA) report was submitted on January 14, 2016, that indicated that A.S. "enjoys the visits with his mother, smiles when he sees her

and becomes fussy if she leaves the room." CASA detailed that appellant's family had helped her obtain an apartment that was clean and furnished. A.S. had remained with appellant's relatives, even though the placement was planned to be only temporary. Appellant's family was committed to help support her in a manner that was best for appellant and A.S. ADHS submitted a court report on January 20, 2016, that recommended continued foster care, work with the family, and a review.

On January 25, 2016, a review hearing was held. The circuit court found that the parents had not made sufficient progress to have A.S. returned to their custody. Appellant had not complied with all court orders or case-planned services. Although she was employed and was participating in therapy at Ozark Guidance Center, the circuit court found that her progress had been only minimal. The prior orders continued in the review order filed on the same date.

Another CASA report was filed on May 4, 2016, and ADHS filed a court report on May 11, 2016, and a case plan on May 12, 2016. The permanency-planning hearing was held on May 16, 2016, at which time the circuit court changed the goal of the case to adoption. The circuit court found that appellant had not complied with most of the court orders and case-planned services and had made only minimal progress. Approximately three months prior to this hearing, A.S. had been moved from the provisional foster home of relatives and placed in a foster home with nonrelatives.

On May 21, 2016, ADHS filed a TPR petition. In the petition, ADHS pled as grounds that TPR was warranted pursuant to Arkansas Code Annotated section 9-27-

41(b)(3)(B)(i)*(a)* (Repl. 2015), the failure-to-remedy ground, and the subsequent-factors ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*.[2]

A hearing was held on the TPR petition on September 19, 2016. Denise Gibson, the ADHS county supervisor, was the first witness to testify. The caseworker was Toni Johnson, but Gibson prepared for the hearing by reviewing the file. Gibson testified that A.S. is adoptable and that his current foster family is interested in adopting him. Gibson explained that she did not feel that A.S. could safely return to appellant because appellant remained in an inpatient facility for alcohol and drug treatment. Gibson also testified that appellant did not demonstrate sufficient stability with her employment or housing just prior to entering inpatient treatment.

Gibson explained that appellant visited with A.S. and that her visits went well. Gibson also stated that A.S. knows that appellant is his mother and is connected to her. She acknowledged that appellant had maintained weekly contact with ADHS through the program assistant. Gibson noted that appellant had some positive drug screens during the case. Gibson also acknowledged that ADHS had not made any contact with appellant's treatment program to ascertain her progress.

The foster mother also testified. She agreed that A.S. knows that appellant is his mother and that A.S. would grieve a loss of the relationship with appellant.

---

[2]ADHS also pled the failure-to-maintain-meaningful-contact ground under section 9-27-341(b)(3)(B)(ii)*(a)*, but that was pled regarding the father and not appellant. As such, that ground did not apply to appellant. *See Dornan v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 355 (finding Dornan did not have notice that she would have to defend against grounds pled against the father and that those grounds could not be used to terminate her rights).

Appellant confirmed during her testimony that she was enrolled in treatment at Decision Point and was in week five of a four- to-six-week program. If the goal was returned to reunification, Decision Point would assist appellant in reunifying with A.S. Appellant explained that her plan on release from her treatment program was to either go to Sober Living or live with her mother or grandmother, who were both permitted by the circuit court to have visits with A.S. during the case. Sober Living is a program that provides transitional housing that would assist appellant in transitioning back into the community and help her find employment. That program would permit A.S. to be placed with appellant while she was a participant in the program. At the time of the hearing, appellant had attained thirteen weeks and four days of sobriety.

Appellant also testified that she was participating in counseling. This participation began before her admission into Decision Point, and she had attended several sessions. Additionally, appellant noted that she had separated from her husband and had spoken with legal aid regarding assistance in obtaining a divorce. She had completed the required twenty-five hours of parenting classes. While appellant acknowledged that she did not have a job at the time of the TPR hearing, she stated that she previously did not have difficulty maintaining employment, having held a prior job for two years.

Appellant testified that she and A.S. are bonded, and she described how when A.S. sees her, he runs, jumps into her arms, and gives her a big hug and a kiss. She acknowledged that she had "messed up a lot" since A.S. had entered foster care but stated that she was genuinely trying. Appellant claimed to have made progress in her counseling to help her realize that A.S.'s father was an impediment to reunification. Prior to this realization,

appellant believed she should simultaneously work on her issues and her relationship with her husband so that A.S. could have an intact family if he returned. She acknowledged benefiting from counseling services and realized that leaving her husband was what she needed so that she could focus solely on A.S. Appellant pointed out that after leaving her husband, she attained her sobriety. She asserted her belief that if she were given additional time and the goal changed back to reunification, she could have A.S. returned to her custody at the Sober Living program within one to two weeks.

At the conclusion of the TPR hearing, appellant argued that she should be given additional time to demonstrate that her progress was sustainable and to take advantage of the programs offered through the drug-treatment facility that focuses on reunifying addicts with their children. Appellant pointed out that her progress was not all "eleventh hour progress," as indicated in the prior orders as evidence that she was always participating and making some progress even if it was only minimal.

Ultimately, the circuit court granted ADHS's TPR petition and terminated appellant's parental rights pursuant to the order filed on October 19, 2016. Appellant filed a timely notice of appeal on November 16, 2016.

## II. *Standard of Review and Applicable Law*

Our court recently reiterated the standard of review in TPR cases as follows:

> Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile. Additionally, the circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exists.

Termination-of-parental-rights cases are reviewed de novo. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.

*Jones v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 125, at 6, ___ S.W.3d ___, ___ (internal citations omitted).

TPR requires clear and convincing evidence that two elements exist. Ark. Code Ann. § 9–27–341(b)(3). First, TPR must be in the child's best interest. *Id.* Second, at least one of nine statutory grounds must exist. *Id.* Here the circuit court found that these conditions existed, and we hold that a review of the record does not leave a definite and firm conviction that these findings were a mistake.

The juvenile code requires that a best-interest finding be based on a consideration of at least two factors: (1) the likelihood that, if parental rights are terminated, the children will be adopted; and (2) the potential harm caused by "continuing contact with the parent, parents, or putative parent or parents." Ark. Code Ann. § 9–27–341(b)(3)(A). But it is the overall evidence—not proof of each factor—that must demonstrate that TPR is in the child's best interest. *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005).

Under the juvenile code, TPR requires that the circuit court consider the likelihood of adoption. Ark. Code Ann. § 9–27–341(b)(3)(A)(i). This factor, however, does not require that adoptability be proved by clear and convincing evidence. *Duckery v. Ark. Dep't of*

*Human Servs.*, 2016 Ark. App. 358. There instead must be evidence that addresses the likelihood of adoption. *Thompson v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 124.

The juvenile code also requires that, to terminate parental rights, the circuit court must consider potential harm. Ark. Code Ann. § 9-27-341(b)(3)(A)(ii). This factor, however, does not require that a specific potential harm be proved by clear and convincing evidence. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. The potential-harm evidence, moreover, must be viewed in a forward-looking manner and considered in broad terms. *Samuels v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 527, 443 S.W.3d 599.

Although the juvenile code provides nine different grounds that warrant TPR, *see* Ark. Code Ann. § 9-27-341(b)(3)(B), in order to terminate parental rights, only one ground is needed. *Albright v. Ark. Dep't of Human Servs.*, 97 Ark. App. 277, 248 S.W.3d 498 (2007). And on de novo review, the court can affirm the circuit court's TPR decision on any ground that was alleged in the petition and proved. *Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483.

### III.  *Discussion*

Appellant does not challenge the statutory grounds for TPR relied on by the circuit court. She instead claims that, even if the circuit court correctly determined that statutory grounds for TPR existed under section 9-27-341(b)(3)(B), her rights cannot be terminated when there is not clear and convincing evidence that TPR was in A.S.'s best interest. *See*

Ark. Code Ann. § 9-27-341(b)(3)(A); *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383.[3]

Appellant argues that her progress was sufficient to prove that she did not pose potential danger to A.S. to the extent that would warrant TPR. Appellant maintains that the major impediment to her reunification with A.S. was her drug addiction and relationship with her husband, who completely failed to comply with the case plan or court orders. She notes that throughout the case, she attempted to comply and finally achieved major progress by the time the TPR hearing was held. By then, appellant had more than thirteen weeks of sobriety and had left her husband. At the time of the TPR hearing, A.S. had been in "stranger" foster care for only seven months because, for approximately the first six months of the case, A.S. was living with relatives. Further, appellant reiterates that A.S. could have been placed with her in her treatment facility in as little as one to two weeks from the TPR hearing through the transitional program offered through her drug-treatment facility. The program would provide her housing and assist her in finding housing beyond the treatment facility. The program also would assist her in finding employment and would provide family counseling for appellant and A.S.

While appellant stops short of arguing that courts should ignore the statutory time frames imposed in these cases, acknowledging that children deserve permanency, she points out that the issue is that the need for permanency should not obliterate the ability of a family to reunify when a parent has never physically abused or harmed her child, has made multiple

---

[3]Appellant does not challenge the adoptability finding, and that finding must be affirmed. *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 242 S.W.3d 305 (2006).

attempts to comply with the court's orders, and was finally able to attain about three and a half months of sobriety. Here, even conducting the potential harm analysis in broad terms, appellant claims that the evidence was not sufficient to show that she continued to pose a risk of harm to A.S. if he had continued contact with her. *See Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001).

The intent of the TPR statute is to provide permanency in a minor child's life under circumstances in which returning the child to the family home is contrary to the child's health, safety, or welfare, and when the evidence demonstrates that the return cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *Garrett v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 401, 499 S.W.3d 659; Ark. Code Ann. § 9–27–341(a)(3). The child's need for permanency and stability may override the parent's request for additional time to improve the parent's circumstances. *Id.* The issue is whether the parent has become a stable, safe parent able to care for the child. *Id.* The court may consider the parent's past behavior, and even full compliance with the case plan is not determinative. *Id.*

Appellant acknowledges that the circuit court could not have returned A.S. to her on the day of the TPR hearing. The testimony and evidence revealed that at the time of the TPR hearing, A.S. was less than three years old and had been in ADHS custody for thirteen months. Although appellant had a long history with ADHS prior to A.S.'s removal, she had entered a rehabilitation program only one month prior to the TPR hearing. ADHS had provided services to appellant throughout her pregnancy with A.S. and following his birth. ADHS county supervisor Gibson testified, "[Appellant] is currently in an inpatient

treatment facility for alcohol and drug issues. She also has some mental health issues that need to be addressed. She was not stable in employment and did not have a job just prior to going inpatient. She was not stable during the case with housing. She has not completed parenting or complied with counseling. She went in rehab the first part of August 2016."

Although appellant asked for more time to prove her sobriety and stability, this "wait-and-see" situation is the type of instability from which the TPR statute intends to protect children. *Basham v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 232, at 4–5, 490 S.W.3d 330, 333. Living in a state of prolonged uncertainty is not in the child's best interest. *See Coleman v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 851, 379 S.W.3d 778 (referencing *Bearden*, *supra*). Moreover, most of appellant's testimony amounts to merely hopeful speculation about future employment, housing, and maintained sobriety. Evidence of parental improvement as TPR becomes imminent will not outweigh other evidence demonstrating a failure to remedy the situation that caused the child's initial removal, *see Duncan v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 252, __ S.W.3d __.

The credibility of any witness's testimony is to be assessed by the trier of fact, and the trier of fact may believe all, part, or none of it. *See Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, 434 S.W.3d 371. The testimony and evidence support the circuit court's conclusion that leaving A.S. in limbo for several more months, waiting to see if appellant's speculations might be realized, posed a potential harm to A.S. Because the findings of the circuit court are not clearly erroneous, we affirm.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.



*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.