SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-465

| | |
|---|---|
| XAZEVIER DUNBAR<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN<br><br>APPELLEES | **OPINION DELIVERED** OCTOBER 19, 2016<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>EIGHTH DIVISION<br>[NO. 60JV-15-624]<br><br>HONORABLE WILEY A.<br>BRANTON, JR., JUDGE<br><br>AFFIRMED; MOTION TO<br>WITHDRAW GRANTED |

## ROBERT J. GLADWIN, Chief Judge

In this no-merit appeal, the Pulaski County Circuit Court terminated appellant Xazevier Dunbar's parental rights to her five children on March 3, 2016. She filed a notice of appeal on March 15, 2016. Counsel for appellant filed a motion to withdraw as counsel on appeal and a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i) (2015), asserting that he has made a conscientious review of the record in this case and of the applicable law but has found no meritorious issues that could arguably support the appeal. After being served by certified mail with the motion to withdraw and a copy of the no-merit brief, appellant filed pro se points for reversal, and the Arkansas Department of Human Services (DHS) and the attorney ad litem filed a joint responsive brief. We affirm the termination-of-parental-rights order and grant counsel's motion to withdraw.

I. *Procedural History*

A petition for dependency-neglect was filed by DHS on May 5, 2015, alleging that appellant's five children, K.L. (born July 25, 2003), M.R. (born October 14, 2007), C.N. (born October 31, 2009), J.B. (born October 14, 2010), and S.N. (born October 20, 2012), were at substantial risk of serious harm as the result of educational neglect and parental unfitness.[1] While investigating an unsubstantiated hotline call in January 2015, DHS discovered that two of the children had several unexcused absences from school, which supported a case for educational neglect, and on March 17, 2015, a protective-services case was opened. Appellant had prior involvement with DHS through a supportive-services case in August 2011, a foster-care case in December 2011, and a subsequent protective-services case in March 2013. During the course of DHS's investigation, appellant was combative with the social worker, who filed a police report. Attempts to speak with the children at their schools and with appellant at her home were largely unsuccessful, and on April 28, 2015, appellant would not allow a DHS social worker to speak to her children, even with law enforcement present. On April 27, 2015, K.L.'s grandmother reported major concerns about the children, stating that she knew appellant had mental-health issues and that appellant had attacked her with a stick, which was reported to police.

A motion for expedited hearing was filed on May 12, 2015, wherein the attorney ad litem alleged that appellant was in jail due to her failure to appear on a disorderly conduct

---

[1]As set forth in the petition for dependency-neglect, the putative father of K.L. and J.D. is unknown, the father of M.R. is James Richards, Jr., and the father of C.N. and S.N. is Christopher Nash. None of these men are the subject of this appeal.

charge arising from an April 2015 encounter with police. Attached were police reports that indicated a history of domestic violence between appellant and her oldest daughter. An order for expedited hearing was granted, and a hearing was set for May 19, 2015. On May 12, 2015, DHS sought an order directing appellant to permit a full investigation of the report it had received against her in January. The trial court granted DHS's petition, and an order was filed directing DHS to interview the children outside appellant's presence and directing appellant to cooperate with the child-maltreatment investigator.

DHS filed an amended petition for ex parte emergency custody and dependency-neglect on May 15, 2015, alleging that the children had been subjected to physical abuse, educational neglect, and parental unfitness. The attached affidavit outlined the history of DHS caseworkers' attempts to locate the children. The caseworker alleged that three of the children had signs of physical abuse in the form of scratches and scars; appellant had driven a car with the children and had "rushed up" behind the caseworker's car during one attempt to locate appellant and her children; appellant had a history of being committed or institutionalized due to mental-health issues; and appellant had physically assaulted the caseworker. An ex parte order was signed on May 15, 2015, finding probable cause to believe that the children were dependent-neglected and placing the children in DHS custody.

An interim order filed on May 19, 2015, required (1) DHS to supervise appellant's visitation; (2) appellant to submit to random drug and alcohol screens; (3) the children to submit to drug screens; (4) no relative placement of children without a court order; and (5) visitation with the mother to be terminated at any time she acted in an aggressive, violent,

SLIP OPINION

or threatening manner or appeared to be emotionally or mentally unstable. A probable-cause order was filed on June 8, 2015, and reflected the same requirements contained in the interim order of that date. On June 29, 2015, DHS filed a motion to transfer custody of K.L. to Willie Carpenter, the paternal grandmother, and an agreed order was filed on June 20, 2015, to that effect.

The July 20, 2015 adjudication order found the children to be dependent-neglected. The trial court took notice of the prior dependency-neglect case and found by clear and convincing evidence that the children had been subjected to aggravated circumstances "in the sense that it is unlikely that services to the family will result in successful reunification within a reasonable period of time as measured from the children's perspective and consistent with their developmental needs."

The adjudication order states that, in the prior case, the children were out of the home in excess of one year and were found to be dependent-neglected due to inadequate supervision and parental unfitness because of their mother's mental-health issues. Appellant admitted that she had mental-health issues and was off of her medications at the time of the incident that had caused some of her children to go into foster care in early 2012. The trial court had found that appellant's long-term mental-health issues caused her to be an unfit parent when she was not on her medications, and it had considered her history of being off medications, her violence, and her noncompliance. Ultimately, the children were returned to appellant in the prior case, and the case was closed in March 2013.

However, the trial court noted in the adjudication order that, in the 2012 case, appellant had submitted to a psychological evaluation by Dr. Paul Deyoub, who found that

she carried an AXIS I diagnosis of schizoaffective disorder, bipolar type, polysubstance dependence (stated to be in remission), cannabis abuse, and neglect of a child, perpetrator; and an AXIS II diagnosis of borderline intellectual functioning. The order quotes Dr. Deyoub's report in part as follows:

> I think she has schizoaffective disorder, because of bipolar symptoms concurrent with symptoms of schizophrenia. She has problems with depression, lability of mood, and also a thought disorder which would characterize schizoaffective disorder. Drug abuse in the past has also complicated her symptoms and has likely contributed to psychotic episodes. This would especially be the case when she used PCP. I think there have been delusions and paranoid ideation, which she is reluctant to admit. She also tends to be isolated from her family, and her parenting scales indicated major difficulty raising the three children that were with her, while [S.N.] and [K.L.] were living with her mother for the last year. I think it is lucky that nothing happened to the three younger children for a woman that was out of control with mental illness, punching holes in the wall, and this violent behavior could have been directed toward these children. Her mental illness was significant, and she requires sustained mental-health treatment.

The trial court stated in the adjudication order that, "[i]n the current case, the mother's behavior is similar to that indicated in this psychological evaluation."

The trial court further found that appellant lacked credibility and "may not be perceiving reality." The trial court described appellant in its order as "assaultive, aggressive, and combative." The court found that she continued to have drug issues, that she had not made marked improvement, and that "[a]ny apparent improvement in the mother's circumstances is merely temporary behavior on her part." The goal of the case was reunification, and appellant was to continue supervised visitation as long as she acted appropriately. A further psychological evaluation was ordered for appellant.

The permanency-planning order filed October 26, 2015, reflects the finding that it was in the children's best interest to remain in DHS custody; reunification remained the

5

goal of the case; and the trial court authorized, but did not require, that a termination-of-parental-rights petition be filed. The trial court found that appellant had made no material progress toward reunification and that her enrollment in a tax-preparation course was nice, but not a realistic sign that she would be gainfully employed as a tax preparer, as the trial court found that it could "not see the mother holding down any job." The trial court made a second finding of aggravated circumstances because it was unlikely that services would result in successful reunification within a reasonable time. Further, the court found that appellant had been combative and belligerent with caseworkers during visitations.

DHS filed a motion to suspend visitation on October 30, 2015, alleging that since the permanency-planning hearing, appellant had continued to be combative and belligerent with the caseworker. "Moreover, the degree of the mother's combativeness has increased to such an extent that Ms. Scott (the caseworker) now has concerns about her and others' physical safety when the mother comes for visitation at the agency office." Attached to the motion is an affidavit of Ashley Scott, agent and employee of DHS, describing various verbal exchanges with appellant that escalated to cursing and threats, such as "I don't play," and "You mother f—ers think I'm joking but I will make a fool out of you and all you mother f—ers at DHS, don't f—ing play with me Ms. Ashley." After appellant filed a response denying the allegations and the attorney ad litem joined DHS's motion, the trial court suspended visitation by order filed November 5, 2015.

DHS filed a petition for termination of parental rights on December 3, 2015, and alleged grounds under the statute as follows:

1) that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent placement of the juvenile in the custody of the parent (*See* Ark. Code Ann. 9-27-341(b)(3)(B)(vii)*(a)*);

2) that the parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to have subjected any juvenile to aggravated circumstances (aggravated circumstances means a juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification) (*See* Ark. Code Ann. §  9-27-341 (b)(3)(B)(ix)*(a)(3)*); and

3) that a parent has abandoned the juvenile (*See* Ark. Code Ann. § 9-27-341 (b)(3)(B)(iv).[2]

At the termination-of-parental-rights hearing, appellant disrupted testimony and the trial court's ruling twenty-eight times, even after being admonished by the trial court not to do so and in light of the trial court's comments that appellant was helping DHS to prove its case against her. The trial court stated,

> I'm going to instruct the witness on the witness stand, Ms. Scott, that you do not have to respond to the mother. She's just babbling out loud, and I want her babbling out loud to be on the record, but nobody's asking her any questions. Her lawyer can put her on the witness stand when it's her turn if she wants to do so; but, right now, the only thing that the mother is doing is showing how inappropriate she is and that she cannot exercise any self-control. I want that to be reflected on the record.

During the trial court's ruling, appellant continued to interrupt, and the following exchange took place:

---

[2] The third ground, abandonment, was alleged to apply to the father of one of the children; he did not participate in the case.

| | |
|---|---|
| THE COURT: | The mother has subjected her children to educational neglect . . . |
| MS. DUNBAR: | That's a lie. |
| THE COURT: | . . . emotional abuse . . . |
| MS. DUNBAR: | That is a lie.  I would have been in court.  They did not miss over no 100 days of school.  That don't even make sense. |
| THE COURT: | . . . emotional abuse, physical harm . . . |
| MS. DUNBAR: | Two or three days sick when you went up there to the school.  My kids ain't missed no 100 days of school.  Y'all need to quit all this lying.  All this is bogus. |
| THE COURT: | At this point, I'm gonna go ahead and have her taken out of the courtroom because she's not letting me rule. |
| MS. DUNBAR: | Bye. F— you. |

The trial court found that the subsequent-factors ground and the aggravated-circumstances ground had been proven by clear and convincing evidence.  Further, that appellant had not become minimally emotionally or psychologically stable enough to be a fit parent; that she was in jail; that she had been in jail a few days without her medication, but her erratic behavior was evident before she went to jail; and that if the children were returned to her, they would be at risk of continued emotional and other harm.  The trial court found it to be in the children's best interest to terminate appellant's parental rights, that the children were adoptable, and that they would be subject to potential harm if returned to appellant.  Appellant filed a timely notice of appeal, counsel filed his motion to withdraw, appellant filed pro se points for reversal, and DHS and the attorney ad litem filed a joint response.  This appeal followed.

II. *Applicable Law*

In *Linker-Flores*, the Arkansas Supreme Court described the procedure for withdrawing as counsel from a termination-of-parental-rights appeal:

[A]ppointed counsel for an indigent parent on a first appeal from an order terminating parental rights may petition this court to withdraw as counsel if, after a conscientious review of the record, counsel can find no issue of arguable merit for appeal. Counsel's petition must be accompanied by a brief discussing any arguably meritorious issue for appeal. The indigent party must be provided with a copy of the brief and notified of her right to file points for reversal within thirty days. If this court determines, after a full examination of the record, that the appeal is frivolous, the court may grant counsel's motion and dismiss the appeal.

*Linker-Flores*, 359 Ark. at 141, 194 S.W.3d at 747–48. Subsequently the supreme court elaborated on the appellate court's role in reviewing a petition to withdraw in a termination-of-parental-rights appeal, holding that when the trial court has taken the prior record into consideration in its decision, a "conscientious review of the record" requires the appellate court to review all pleadings and testimony in the case on the question of the sufficiency of the evidence supporting the decision to terminate and that only adverse rulings arising at the termination hearing need be addressed in the no-merit appeal from the prior orders in the case. *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005).

Termination-of-parental-rights cases are reviewed de novo. *Greenhaw v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 294, ___ S.W.3d ___. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.* The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.*

SLIP OPINION

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(B), (b)(3)(A) (Repl. 2015); *Houseman*, *supra*. Proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205. A trial court is required to consider only potential harm to a child's health and safety that might come from continued contact with the parents; there is no requirement to find that actual harm would result or identify the potential harm. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495. The potential-harm analysis is to be conducted in broad terms. *Id.*

### III. *No-Merit Argument*

Counsel contends that, after his conscientious review of the record, he found no issues of arguable merit for an appeal. Counsel recites the procedural history of the case and contends that there was clear and convincing evidence that DHS had an appropriate placement plan for the children. Ark. Code Ann. § 9-27-341(b)(1)(A). DHS introduced uncontroverted testimony from Ashely Scott that the children were very loving, adoptable, and needed permanency. The trial court found that they were adoptable and in need of permanency. Therefore, clear and convincing evidence supported the trial court's finding that DHS's placement plan for the children was appropriate, and further, that the children

were adoptable. Ark. Code Ann. § 9-27-341(b)(3)(A)(i). Counsel also contends that clear and convincing evidence supports the trial court's finding of potential harm to the children should they be returned to appellant's custody. Ark. Code Ann. § 9-27-341(b)(3)(A)(ii). The trial court took judicial notice of the previous involvement that DHS had with appellant and the psychological evaluation performed in the earlier case. The trial court also heard the testimony regarding appellant's violent outbursts toward the caseworker and the appellant's continuous interruptions at the termination hearing.

Finally, counsel maintains that clear and convincing evidence supported the statutory grounds for termination. The subsequent-factors ground was supported by, among other things, appellant's outbursts toward the caseworker in front of the children; visitations having to be supervised because of appellant's erratic and threatening behavior; and appellant's removal from the courtroom due to her repeated outbursts. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*. Counsel contends that the aggravated-circumstances ground was supported by the prior dependency-neglect case involving the family, which included a psychiatric evaluation that indicated a permanent mental-health condition. Thus, the trial court's finding that it was unlikely that services to the family would result in successful reunification within a reasonable period of time was supported by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*.

IV. *Pro Se Points for Reversal*

Appellant filed with this court a letter stating that she would like her parental rights to be reinstated and for her visitation to be reestablished. She also stated that she was sorry

for her actions and has been trying to correct them. She asked for another chance to prove herself for her children.

DHS and the attorney ad litem filed a joint response and contend that they agree with counsel's motion and no-merit brief. They assert that appellant is barred from raising any new argument on appeal, and any remaining argument is a challenge to the sufficiency of the circuit court's best-interest and statutory-ground findings. These arguments are requests that we reweigh the evidence but are not reversible-error arguments. *Posey v. Ark. Dep't of Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). This court cannot act as a super fact-finder or second-guess the circuit court's credibility determination. *Lynch v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 149.

## V. *Conclusion*

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. The petition must include an argument section listing all rulings adverse to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explaining why each adverse ruling is not a meritorious ground for reversal. The petition must also include an abstract and addendum containing all rulings adverse to the appellant made at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(i). After carefully examining the record and the brief presented to us, we conclude that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and that the appeal is wholly without merit.

12

Accordingly, we affirm the order terminating appellant's parental rights to her five children, and counsel's motion to withdraw is granted.

Affirmed; motion to withdraw granted.

VIRDEN and GLOVER, JJ., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant.

*David Hodges*, for appellee.