Cite as 2022 Ark. App. 28

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CV–21–110

| | |
|---|---|
| | **Opinion Delivered** January 19, 2022 |
| SAMANTHA JONES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58JV-18-87]<br><br>HONORABLE KEN D. COKER, JR., JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## WAYMOND M. BROWN, Judge

Appellant Samantha Jones appeals the Pope County Circuit Court order terminating her parental rights to her daughter, SDSJ, born May 13, 2018. Pursuant to *Linker-Flores v. Arkansas Department of Human Services*,[1] and Arkansas Supreme Court Rule 6-9(j),[2] appellant's counsel has filed a motion to withdraw and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of our court sent a copy of counsel's brief and motion to withdraw to appellant, informing her of her right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(j)(3). Appellant has not filed

---

[1]359 Ark. 131, 194 S.W.3d 739 (2004).

[2](2021).

any pro se points for reversal. We affirm the termination and grant counsel's motion to withdraw.

The Arkansas Department of Human Services (DHS) took emergency custody of SDSJ on July 11, 2018, after DHS was contacted by the Russellville Police Department (RPD). RPD informed DHS that appellant had placed a call to them saying that her baby was dying. Appellant and the baby were found in a ravine near a wooded area, and appellant claimed that the baby "had Satan in her." Appellant informed the officer that she had taken Adderall and had been drinking Jägermeister. SDSJ was taken to St. Mary's to be evaluated and was found to be healthy and unharmed. SDSJ was removed from appellant because her emotional stability seriously affected her ability to supervise, protect, or care for the child. DHS filed a petition for dependency-neglect on July 16, outlining the circumstances of the removal in an attached affidavit. The court entered an ex parte order for emergency custody the same day.

A probable-cause hearing took place on July 23. In the July 25 order, the court found that an emergency existed making it necessary for DHS to remove SDSJ from appellant's custody and that those conditions still existed. Appellant was given reasonable visitation contingent upon her submitting to a drug screen and not appearing under the influence of drugs or alcohol. Appellant was ordered to submit to random drug screens, watch the video "The Clock is Ticking," attend and complete parenting classes, obtain and maintain stable and appropriate housing, obtain and maintain stable and gainful employment, attend counseling as recommended by a counselor or therapist, submit to a

psychological evaluation and follow the recommendations, submit to a drug-and-alcohol assessment and complete all recommendations, and take medications as prescribed.

In the August 20 order, SDSJ was adjudicated dependent-neglected due to appellant's failure to provide for the essential and necessary physical, mental, or emotional needs of SDSJ. The case goal was set for reunification with appellant.

A review hearing took place on November 5. In the order filed the same day, the court found that the case goal should remain reunification. It also found that DHS had made reasonable efforts to provide family services and finalize a permanency plan for SDSJ. In addition to what had already been ordered, appellant was ordered to submit to and successfully complete outpatient drug treatment, to submit to alcohol swabs, and to submit to medication management. A second review hearing took place on January 14, 2019. In the order filed the same day, the court found that appellant had partially complied with the case plan. The court noted that appellant had failed to complete parenting classes and that she was on her third round of parenting classes provided by DHS. The court also stated that appellant had failed to attend counseling but noted that she had recently begun counseling. Additionally, appellant was not always available for home visits, and she had married William Berry, but he did not want to submit to background checks. Another review hearing took place on April 1. In the April 9 order, the court continued reunification as the case's goal. The court ordered that Quapaw House and DHS be given access to appellant's mental-health records from Counseling Associates.

The permanency-planning hearing (PPH) took place on July 1. In the July 8 order, the court found that the goal of the case should remain reunification since appellant had

been "complying with the established case plan and orders of the court and has made significant measurable progress toward achieving the goals established in the case plan, and the parent has been diligently working towards reunification." The court ordered that appellant be allowed at least three hours of visitation a week. The court ordered appellant to execute a release so that DHS could obtain her mental-health and substance-abuse-treatment records. A second PPH took place on September 30. In the October 3 order, the court changed the goal of the case to adoption.

DHS filed a petition for the termination of appellant's parental rights on October 31. However, it filed a motion to dismiss its petition on March 24, 2020, and the court issued a dismissal the same day. DHS filed a second petition for the termination of appellant's parental rights on June 19, alleging two grounds for the termination of appellant's parental rights to SDSJ: (1) twelve-month failure to remedy and (2) subsequent other factors.

The termination hearing took place on August 17. Appellant testified that she was residing at the Econo Lodge in Russellville with her dog. She admitted that she has had numerous run-ins with law enforcement and has pled guilty to several charges since SDSJ was removed. She stated that it would not surprise her to know that she has been arrested, charged, or convicted on thirteen different occasions in Yell County since this case opened. She said that she wanted to complete school and move away. She acknowledged that she had also been arrested, charged, or convicted on thirteen occasions in Pope County since the case began. She testified that she had not had a drink since her last arrest on June 1, and before that day, she was not drinking. Appellant stated that she married Dr. William Berry on November 10, 2018, and admitted that he filed a complaint for annulment five days

4

later. She also admitted that Dr. Berry had recently filed a petition for divorce in Yell County; however, she insisted that their relationship is "perfectly fine."

On cross-examination by the ad litem, appellant stated that none of the arrests would have ever happened if she had custody of SDSJ because she and SDSJ would not be in Arkansas. Appellant said that she quit drinking and was adamant that she does not drink anymore. She stated that she has had two DWIs and that she has never had a driver's license. She said that she now has Donna Rose, whom Dr. Berry pays, to drive appellant around.

Upon questioning by her attorney, appellant stated that she is in "hair school" and wishes to be an aesthetician. She said that she should be finished with school in about ten more months. She testified that she already had a job lined up after she completes school and that it will pay enough for her and SDSJ. Appellant stated that she had undergone "every kind of rehab" for her alcohol use. However, she said that "the best kind, though, is Jesus Christ and that's who helps you out every day." She testified that she last attended rehab in Hot Springs where "Ms. Edith" was her counselor. Appellant said that the visits with SDSJ are "fantastic" and that they watch television together, cuddle, color, play with dolls and puzzles, and sometimes go outside during the visits. She indicated to the court that Dr. Berry would also be willing to move because he is planning to retire.

On redirect, appellant stated that SDSJ is twenty-seven months old and had been in DHS's custody for twenty-five months. Appellant agreed that it would be sometime in the middle of 2021 before she is stable economically. She also agreed that her housing situation is not stable at the time. On recross by the ad litem, appellant stated that she did not attend the last staffing for SDSJ because of spotty Wi-Fi at the hotel.

5

Lieutenant John Frank of the Yell County Sheriff's Office testified that he came in contact with appellant on November 1, 2091, after she had gotten into someone's car "all upset." He stated that she kept talking about a dead body hanging in the trees. He said that when he asked appellant if she was married, she replied, "Yes, I'm married to Jesus Christ." He testified that he also backed another officer in March 2019 when appellant was arrested for fleeing and DWI.

Hannah Lancaster testified that she is currently the DCFS supervisor in Johnson County. She stated that prior to this, she was a caseworker in Pope County and that appellant was part of her case load from August 7, 2019, to March 9, 2020. She said that appellant was partially complying with the case plan during the time she was appellant's caseworker. She opined that appellant and Dr. Berry's relationship was not stable. On cross-examination by the ad litem, Lancaster stated that appellant told her that appellant and Dr. Berry "did fight quite a bit." During cross-examination by appellant's attorney, Lancaster stated that appellant attended counseling with Christy Hansell at least once a month but that she was unaware of what they worked on "treatment-wise." She also stated that she did not know the treatment plan appellant worked while in drug treatment.

Gwendolyn Maxwell of DHS testified that she is currently a resource worker. She stated that prior to this, she was appellant's caseworker for approximately three months after Lancaster left. She stated that she attempted to provide appellant services during the time she was the caseworker but that she could not reach appellant and did not have an address to do any home visits. As a result, visitations took place at the DHS office. She stated that appellant did not attend counseling while she was the caseworker because Counseling

Associates said appellant owed a balance. She said that appellant went "acute" and was placed in Turning Point from May 14 to May 19. She testified that appellant completed six visits with SDSJ and missed five when she was the caseworker. Maxwell stated that appellant was arrested on June 1 for public intoxication. She said that she was concerned about appellant's sobriety but that there was no way—other than prescreens—to get an indication of what appellant was doing. On cross-examination, Maxwell agreed that the counseling services were court ordered but could not explain why DHS did not pay the cost if the order said that it would. On redirect, Maxwell stated that she really did not know if the court ordered DHS to cover the cost of appellant's counseling.

Debra Handley of DHS stated that she is currently appellant's caseworker. She said that she took over the case from Maxwell on June 15. She testified that appellant began counseling at Restored Life Counseling Services in June but only attended the initially appointment. She stated that she had been unable to get random drug screens from appellant; but that all of appellant's previsit drug screens had been negative. She testified that appellant told her that appellant and Dr. Berry were getting a divorce and that appellant indicated she thought Dr. Berry was spying on her. She stated that appellant even wanted the door to remain open during visitations to make sure that Dr. Berry was not watching her. Handley stated that she is concerned about appellant's mental state because appellant would be easily distracted and would talk to "other entities in the room" as well as "talk to Jesus Christ." She stated that she had no doubt that appellant loves SDSJ and wants her returned. During cross-examination by the ad litem, Handley stated that SDSJ "takes care of" and comforts appellant during visitation. She said that appellant has not been taking any

7

prescription medications lately. Upon cross-examination by appellant's attorney, Handley stated that she observed three visits between appellant and SDSJ and that appellant did not appear to be under the influence of drugs or alcohol during those visits.

Stephanie Hawkins testified that she is a program assistant at Pope County DHS. She stated that she supervises visitations between appellant and SDSJ. She said that for the last couple of months, appellant has lived at the Econo Lodge in Russellville. She stated that she has dropped appellant off at the hotel once after visitation. She testified that although appellant does not have a driver's license, appellant has been driving. She stated that appellant told her that Dr. Berry gives appellant money to have sex with him, and that is how appellant is able to afford to stay at the hotel. On cross-examination by the ad litem, Hawkins stated that appellant drives a small SUV, but Hawkins was unaware of the vehicle's make or model.

Appellant unsuccessfully moved for a "directed verdict" at the conclusion of DHS's case. The court granted DHS's petition after finding that appellant has a serious unresolved issue with alcohol; that appellant's numerous run-ins with law enforcement called into question her ability to provide a stable home for SDSJ; that appellant's auditory hallucinations "just a few months ago" were of "great concern" because it calls into question appellant's ability to protect SDSJ; that appellant's relationship with Dr. Berry is unstable, and he is appellant's sole support; that appellant's living situation is unstable; that it would be a very unstable, unhealthy, unsafe situation if SDSJ was returned to appellant's custody; that SDSJ is adoptable; and that DHS had proved both grounds for termination in that appellant had not remedied the conditions that caused removal, and subsequent to the

8

removal, appellant has had multiple arrests, is in an unstable relationship with Dr. Berry, continues to use alcohol, and has unresolved mental–health issues evidenced by audio and visual hallucinations.

DHS subsequently filed a motion and brief to reopen the record of the termination hearing on August 24. The court granted the motion in an order filed on September 16. Additional testimony was taken in a hearing held on September 22. Yvonne Chronister, the county supervisor for DCFS in Pope County, testified that there is a very high likelihood that SDSJ will be adopted if appellant's parental rights were terminated based on SDSJ's age, the fact that SDSJ has no developmental issues that would impede adoption, and SDSJ's current placement wishes to adopt her as they adopted SDSJ's half sibling. The court readopted the findings it made in the previous hearing and amended its finding regarding adoptability of SDSJ based on Chronister's testimony. The termination order was filed on September 28. The court found that termination was in SDSJ's best interest because there was a very high likelihood that SDSJ would be adopted, and there was a risk of potential harm if SDSJ was returned to appellant's custody. The order states in pertinent part:

> The mother continues to have ongoing, unaddressed mental health issues and has not attended counseling as ordered. The mother continues to have ongoing, unaddressed alcohol abuse issues despite the completion of substance abuse treatment. The mother has two DWI's, one public intoxication, and one disorderly conduct conviction since the case began. The mother has been arrested on multiple charges since the case began. The mother is currently living in a motel. The mother is in an unstable relationship with Dr. William Berry and he is her sole income source.

> That the juvenile has been adjudicated by the Court to be dependent-neglected and has continued out of the custody of the mother for twelve (12) months and despite a meaningful effort by the department to rehabilitate the parent and correct the conditions which caused removal, those conditions have not been remedied by the parents. A.C.A. § 9-27-341 (b)(3)(B)(i)(a)[.]

9

That, subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose which demonstrate that return of the juvenile to the custody of the parent is contrary to the juveniles' [sic] health, safety or welfare and that despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances which prevent return of the juvenile to the custody of the parent. A.C.A. § 9-27-341 (b)(3)(B)(vii)(a). The mother continues to have ongoing, unaddressed mental health issues and has not attended counseling as ordered. The mother continues to have ongoing, unaddressed alcohol abuse issues despite the completion of substance abuse treatment. The mother has two DWI's, one public intoxication, and one disorderly conduct convection since the case began. The mother has been arrested on multiple charges since the case began. The mother is currently living in a motel. The mother is in an unstable relationship with Dr. William Berry and he is her sole income source.

Appellant filed a timely notice of appeal on October 15 and an amended notice of appeal on October 26.

We review termination-of-parental-rights cases de novo.[3] The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[4] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[5] In determining whether a finding is clearly erroneous, the reviewing court gives due deference the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses.[6]

---

[3]*Dunbar v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 472, 503 S.W.3d 821.

[4]*Id.*

[5]*Norton v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 285.

[6]*Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. 356.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child.[7] The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the child will be adopted and of the potential harm caused by returning custody of the child to the parent.[8] Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established.[9]

Arkansas Supreme Court Rule 6-9(j)(1)(A) allows counsel for an appellant in a termination case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. In evaluating a no-merit brief, the issue for the court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal.[10]

---

[7]*Houseman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153.

[8]Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021).

[9]*Id.*

[10]*Linker-Flores*, *supra*.

Appellant's counsel notes that the evidence supports the termination of appellant's parental rights. He contends that there was sufficient evidence to support the twelve-months failure-to-remedy ground.[11] Counsel explains that appellant could not properly parent SDSJ at the time of removal. Appellant failed to remain sober during the case and had several alcohol-related arrests. Appellant was unable to find and maintain stable housing and employment as ordered by the circuit court. Appellant also had unresolved mental-health issues and was not taking any medications for it. Appellant's situation seemed to get worse as the case progressed. Over two years into the case, appellant was still in no condition to parent and take care of SDSJ. In addition, she was in an unstable relationship and relied solely on her husband for financial support. We agree with counsel that no meritorious argument can be made that the circuit court erred in terminating appellant's parental rights on this ground. Proof of only one ground is necessary to terminate parental rights.[12] However, the same evidence that supports this ground also supports the subsequent-other-factors ground.[13]

Evidence also supports the court's best-interest finding. Chronister testified that SDSJ is adoptable and that SDSJ's current placement wishes to adopt her. Additionally, the circuit court determined that SDSJ would be subjected to potential harm if returned to appellant due to her failure to remedy the conditions that caused removal and the subsequent issues that arose after the case started. A parent's continued drug and/or alcohol use and

---

[11]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*.

[12]*See Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).

[13]Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*.

failure to provide a stable home both support the potential–harm finding made by the circuit court.[14]   Moreover, a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody.[15]

Counsel maintains that the termination of appellant's parental rights was the only adverse ruling made against appellant; however, a close review of the transcript reveals that the circuit court allowed Lancaster to testify—over appellant's objection—why Lancaster felt that appellant and Dr. Berry had an unstable relationship.  In *Sartin v. State*,[16] the supreme court held that the failure to list and discuss all adverse rulings in a no-merit termination-of-parental-rights case does not automatically require rebriefing if the ruling would clearly not present a meritorious ground for reversal.  Such is the case here as the evidentiary ruling would not be a ground for reversal.  Counsel has otherwise complied with our rules, and we hold that there is no arguable merit to an appeal of the decision of the circuit court to terminate appellant's parental rights.  Accordingly, we affirm the termination and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

ABRAMSON and BARRETT, JJ., agree.

*Thomas Wilson*, for appellant.

One brief only.

---

[14] *See Chandler-Sivage v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 328, 532 S.W.3d. 113.

[15] *Jennings v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 429, 636 S.W.3d. 119.

[16] 2010 Ark. 16, 362 S.W.3d 877.