2010 Ark. App. 605

**Anna LEONARD, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
**Appellee.**

**No. CA 10–396.**

Court of Appeals of Arkansas.

Sept. 15, 2010.

---

4.  This claim is based on the opinion tendered in Dr. Lytle's report of August 24, 2007.

Deborah Ruth Sallinga, Little Rock, Counsel for Appellant.

KAREN R. BAKER, Judge.

Appellant Anna Leonard appeals from the January 19, 2010 order terminating her parental rights to her children A.H., born July 18, 2005, and K.H., born February 1, 2007.[1] Appellant timely filed a notice of appeal on February 2, 2010. Appellant's counsel has filed a no-merit brief pursuant to *Linker–Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6–9(i), asserting that there are no issues that would support a meritorious appeal and requesting to be relieved as counsel. The clerk of this court mailed a certified copy of counsel's motion and brief to appellant, informing her of her right to file pro se points for reversal, and the green card was returned. Appellant has filed no pro se points for appeal. We grant counsel's motion to withdraw and affirm the order terminating appellant's parental rights.

On May 7, 2009, the Arkansas Department of Human Services ("DHS") took A.H. and K.H. into its custody on an emergency basis. DHS workers responded to a

---

1. The court's order also terminated the parental rights of the fathers of the children in this case. Neither father has filed an appeal.

call from the Pulaski County Sheriff's Office that appellant's two young children were playing in the road and had almost been hit by a truck. The DHS workers reported that the home was "filthy," there were large quantities of drugs and drug paraphernalia in the home, and K.H. appeared to have burns on his face and side. Appellant was arrested for child endangerment, possession of drug paraphernalia, and possession of marijuana. The circuit court entered an emergency order on May 9, 2008, placing custody of the two children with DHS. At a hearing held on May 15, 2008, the court found probable cause to believe the children were dependent-neglected. The court adjudicated the children dependent-neglected on June 17, 2008, based on appellant's failure to properly supervise and her recent arrest. The court made further findings that appellant was unfit because of her recent suicide attempt, she had no explanation for K.H.'s injuries and had not sought medical treatment for them, she had failed drug screens, the children's environment and the condition of the home were concerning, and she had a history of behavior problems in her prior juvenile-court case. The court stated that the goal in the case was reunification. The court then ordered appellant to obtain a psychological examination and follow its recommendations, complete parenting classes, submit to drug and alcohol screens and a drug and alcohol assessment and to follow its recommendations, obtain and maintain stable housing and income, and attend NA meetings and maintain attendance records. The court also ordered paternity testing for Kyle Hughes with respect to the two children and ordered Hughes to comply with conditions that are not relevant to this appeal.

At the review hearing held on September 23, 2008, appellant was attending inpatient drug treatment. The court authorized visitation for appellant, but noted that the mother was in danger of being discharged from the treatment program due to violations of the program rules. On February 17, 2009, and June 23, 2009, the court held permanency-planning hearings and found that appellant's efforts to comply with the court's orders were compelling reasons to continue toward the goal of reunification. Appellant was employed and had successfully completed the drug-treatment program, and the two children were going home for weekend visits.

By the September 15, 2009 permanency-planning hearing, the court changed the goal to termination of parental rights. It stated that appellant lacked any semblance of credibility at that time. The court found that appellant had unstable housing, tested positive for drugs and possibly gave false samples, and had outstanding warrants.

On December 9, 2009, the court held a termination-of-parental-rights hearing. DHS presented evidence that appellant was receiving intensive family services through HLH Consultants from June to August 2009. The services were aimed at teaching appellant how to deal with the children's behaviors during the period that the children were having weekend visits in her home. The services were terminated in August when DHS discovered appellant was not living in the housing for which the home visits had been approved, but was living with her father due to a problem with the septic system in her trailer.

Further, appellant had failed to continue attending NA meetings, and beginning with her October drug tests, the tests started to arouse concern. When a urine test registered no temperature, suggesting that the sample had been altered, the court ordered a hair-follicle test. That test returned positive for methamphetamine, and a December 7, 2009 drug test

returned positive for methamphetamine, THC, and Benzodiazepine. At the hearing, appellant vehemently denied using meth, saying instead that her drug of choice was pills or marijuana, which she admitted to smoking approximately four weeks prior to the hearing.

Appellant had not obtained stable housing, moved frequently both with and without K.H.'s father, and had not maintained stable employment, as she was laid off from her job in October. Appellant's DHS caseworker testified that she had attempted to no avail to assist appellant in setting up individual counseling, that the visits with the children did not go well, and that the parents' behavior around the children had an adverse effect on the children. She testified that the children would strike appellant, the parents would get physically violent with one another, and the parents would curse at one another.

Appellant was also arrested in May 2009 for theft of property, for which she received probation. She was also on probation for the child-endangerment and drug charges. In September 2009, appellant was arrested on an outstanding warrant for a probation revocation for failure to pay probation fees.

Psychological examiner Dr. Paul Deyoub testified extensively at the hearing regarding appellant's psychological evaluation. He opined that appellant was a very troubled young woman, with a long history of drug abuse, behavior problems, and personality disorder. He stated his belief that appellant was an unfit parent.

Based on the evidence presented at the hearing, the trial court granted the petition to terminate appellant's parental rights. In its January 29, 2010 order, the court stated as follows:

The Court finds it to be contrary to the children's best interests, health and safety, and welfare to return them to the parental care and custody of their parents and further finds that [DHS] has proven by clear and convincing evidence that a[sic] juveniles have been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parents for twelve months and, despite a meaningful effort by [DHS] to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parents.

From this order, appellant filed this appeal.

■■■ We turn first to the question whether there is clear and convincing evidence to support the circuit court's decision to terminate appellant's parental rights. *See Linker–Flores v. Ark. Dep't of Human Servs. (II)*, 364 Ark. 224, 217 S.W.3d 107 (2005). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and welfare of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark.App. 328, 255 S.W.3d 505 (2007). An order terminating parental rights must be based on a finding that termination is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning custody of the child to the parents. Ark.Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Repl. 2009); *see Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. The order terminating parental rights also must be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9–27–341(b)(3)(B). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm

conviction as to the allegation sought to be established. *Meriweather,* 98 Ark.App. at 331, 255 S.W.3d at 507. When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We review termination orders de novo. *Id.*

The trial court determined that termination of parental rights was in the best interest of the children and that DHS had met its burden of proving at least one of the statutory grounds for termination by clear and convincing evidence. In this case, the trial court relied upon the following grounds:

An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:

(A) That it is in the best interest of the juvenile, including consideration of the following factors:

(i) The likelihood that the juvenile will be adopted if the termination petition is granted; and

(ii) The *potential harm,* specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents; and

(B) Of one (1) or more of the following grounds:

(i)(a) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

Ark.Code Ann. § 9–27–341(b)(3)(A) and (B) (emphasis supplied).

In its consideration of the children's best interest, the court noted that there was testimony from the adoption specialist that the children, who were two and four at the trial, were adoptable. She also testified that she had found thirteen potential matches for families for the children. We have held that testimony from a caseworker that children are adoptable is sufficient. *See Reed v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 416, 375 S.W.3d 709. With respect to the "potential harm" inquiry, the court did not make specific findings in its order at the hearing; however, the statute does not require a specific finding. Rather, the court must consider this factor. The court does not have to determine that every factor considered be established by clear and convincing evidence. Instead, after considering all of the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *McFarland v. Ark. Dep't of Human Servs.,* 91 Ark.App. 323, 210 S.W.3d 143 (2005). In considering the "potential harm" factor, the court is not required to find that any actual harm would result or identify any specific harm. The harm analysis should be considered in broad terms. *Id.*

Considering the testimony at the termination hearing, we conclude that the court did not clearly err in terminating appellant's parental rights. That termination was in the children's best interest is amply demonstrated by the proof supporting the termination of appellant's parental rights. The evidence at trial showed that appellant had failed to ob-

tain stable housing or regular employment. Appellant had begun abusing drugs again and disobeyed court orders to attend NA meetings regularly. Dr. Deyoub testified that appellant had a personality disorder, that the children would suffer because of appellant's live-in boyfriends, and that appellant was an unfit parent. Finally, appellant's arrest and her continued problems with her probation were salient factors. These factors provide a sufficient basis for the circuit court's finding that termination was in the children's best interest.

■ We also conclude that sufficient evidence supports the trial court's findings of statutory grounds. The children had been adjudicated dependent-neglected, had continued to live out of appellant's custody for a period of twelve months, and despite a meaningful effort by DHS to rehabilitate appellant and correct the conditions that caused the removal, those conditions had not been remedied. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(i). When the children were taken into DHS's custody, appellant was not regularly employed, was using illegal drugs, and did not have stable housing. At the time of the termination hearing, appellant had failed to attain adequate stability in her employment or housing and had again tested positive for drugs. Appellant's counsel conceded at trial that DHS had met its statutory burden, but appellant was requesting additional time to rectify the conditions. Our Supreme Court has stated that a child's need for permanency and stability may override a parent's request for additional time to improve her circumstances. *See Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Here, appellant had a period in excess of nineteen months during which to address these issues. The trial court found that there was clear and convincing evidence to support terminating parental rights on this basis, and based on the testimony and evidence adduced at the termination hearing, we agree. We need not address the other three potential grounds.

■ In addition to the ruling terminating appellant's parental rights, counsel addresses two other adverse rulings. When appellant was testifying about the progress she had made and why that justified additional time for her to reunify with her children, she stated, "My kids don't deserve to be without their mom and daddy at all. Even the counselor said whenever I walked in . . . ." The attorney ad litem objected on the basis of hearsay, and the court sustained the objection. Appellant did not proffer what she would have testified concerning the counselor's statement, and we cannot say the trial judge abused his discretion in sustaining the ad litem's objection.

■ Finally, counsel briefed the trial court's ruling that the report from the drug test would be admitted over the hearsay objection of Mr. Hughes. Appellant did not object to the report's admission. Where multiple parties are involved, unless appellant's counsel objects on appellant's behalf, the matter is not preserved for her benefit on appeal. *Smith v. State,* 308 Ark. 603, 826 S.W.2d 256 (1992).

Affirmed; motion to be relieved granted.

GRUBER and HENRY, JJ., agree.