Cite as 2022 Ark. App. 162

# ARKANSAS COURT OF APPEALS
### DIVISION I
#### No. CV-21-482

MARY WILLIAMS

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES AND MINOR CHILD

APPELLEES

Opinion Delivered April 13, 2022

APPEAL FROM THE FRANKLIN
COUNTY CIRCUIT COURT,
NORTHERN DISTRICT
[NO. 24OJV-20-5]

HONORABLE KEN D. COKER, JR.,
JUDGE

AFFIRMED; MOTION TO
WITHDRAW GRANTED

---

### RITA W. GRUBER, Judge

Mary Williams appeals the Franklin County Circuit Court's order terminating her

parental rights to BW, born December 10, 2019. Pursuant to *Linker-Flores v. Arkansas*

*Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme

Court Rule 6-9(j), her counsel has filed a motion to withdraw and a no-merit brief setting

forth all adverse rulings from the termination hearing and asserting there are no meritorious

issues to support an appeal. Our court clerk mailed a copy of counsel's motion and brief to

Mary informing her of her right to file pro se points for reversal. She has filed none. We

affirm the termination order and grant counsel's motion to withdraw.

On February 27, 2020, the Arkansas Department of Human Services (DHS) exercised

a seventy-two-hour emergency hold on BW. DHS filed a petition for emergency custody and

dependency-neglect on March 2 alleging that BW was dependent-neglected due to neglect or parental unfitness. The affidavit in support of the petition stated Mary had tested positive for methamphetamine and amphetamines while participating in a drug-court program and had multiple unexcused absences. On February 27, 2020, the parole office in Ozark informed a Franklin County DCFS worker that Mary was being sanctioned for ninety days. At the parole office, Mary admitted recent drug use. The affidavit further provided that Mary was then being held at the Franklin County Jail and that BW had been left with staff at the parole office. The circuit court entered an ex parte order for emergency custody on March 2.

A probable-cause hearing took place on March 5. The circuit court found that probable cause existed at the time of BW's removal and continued to exist such that it was necessary for BW to remain in DHS custody. Mary was ordered to submit to random drug screens; to watch the video "The Clock is Ticking"; to attend and complete parenting classes; to obtain and maintain stable and appropriate housing and employment; to submit to a drug-and-alcohol assessment and complete all recommendations; and to resolve all criminal issues. Pursuant to an agreed adjudication order entered on April 21, the court found by a preponderance of the evidence that BW was dependent-neglected as a result of parental unfitness because of Mary's drug use and her incarceration due to her parole violation. The court set the goal of reunification.

Three review hearings took place, and the court entered review orders on July 28, October 15, and December 11. After the July hearing, the court entered an order continuing

2

the goal of reunification. In addition to the previous orders, Mary was ordered to submit to, and successfully complete, inpatient drug treatment, which was part of the conditions of her probation. In the October review order, the court continued the goal of reunification and found that Mary had partially complied with the case plan and court orders. Mary was also ordered to submit to, and successfully complete, outpatient drug treatment. The December review order indicated that Mary had not complied with the case plan and court orders, but the goal of the case remained reunification.

A permanency-planning hearing took place on February 10, 2021, which Mary attended from jail via Zoom. In the February 22 order, the court found that Mary had not complied with the case plan and court orders and changed the goal of the case to termination and adoption. The prior orders of the court continued, and DHS was ordered to continue providing reunification services.

Following a status-review hearing, the circuit court entered an order on May 4 setting the case for a termination hearing on July 14. DHS filed a petition for termination of parental rights on May 4, alleging that termination was in BW's best interest and stating multiple statutory grounds. The grounds pleaded were failure to remedy under Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Supp. 2021), failure to maintain contact or provide support under Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)(*a*), subsequent factors under Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*), and criminal sentence for a substantial period under Ark. Code Ann. § 9-27-341(b)(3)(B)(viii).

3

A termination hearing took place on July 14, 2021, at which two witnesses testified—Mary and caseworker Cheryl Warden. At the time of the termination hearing, Mary was incarcerated at the McPherson Unit of the Arkansas Department of Correction. Mary admitted that the case began when she was incarcerated at the Franklin County Jail for failure to comply with the terms of her parole. Mary remained in jail until she was released in May 2020; however, she did not have contact with DHS until August 2020, stating that she attended a twenty-eight-day, inpatient drug-treatment program at Gateway in Fort Smith. When she made contact with DHS on August 31, she admitted using methamphetamine. Mary said that between May and August, she worked cleaning homes and doing other jobs to survive. Mary admitted that she was arrested on December 5, 2020; charged with drug possession; pled guilty to the charge on March 19, 2021; and was sentenced to thirty-six months' imprisonment followed by thirty-six months' suspended imposition of sentence (SIS). She testified that her probation had been revoked in three separate cases after pleading guilty, and she was sentenced in each case to thirty-six months' imprisonment to be followed by thirty-six months' SIS. The sentences resulting from the revocations were to run concurrently with the sentence from the drug conviction. Mary testified that she attempted to request drug treatment but instead entered the plea agreements that required her to be imprisoned.

After her release from Gateway, Mary admitted that outpatient drug treatment was recommended but that she did not participate. She also acknowledged using methamphetamine and marijuana between the time she left Gateway and her arrest in

4

December. Mary said she had been incarcerated since December 5, 2020. She had not seen BW since Thanksgiving 2020 but thought she had five or six visits with BW between May and November 2020. She participated in services while in prison including anger-management, domestic-violence, and parenting programs. Mary testified that she had not had any infractions and thought that she might be released by the end of 2021. Her plan upon release was to enter a program at Crossroads Ministry. Mary said she had been in contact with Crossroads and explained that this program provides classes and assistance with things such as employment, transportation, and clothing. Mary admitted that she did not have a support system in place to help her upon her release. She acknowledged her mistakes but believed that she could safely parent BW when released.

Cheryl Warden, the caseworker assigned to Mary's case, testified that Mary completed inpatient drug rehabilitation but did not participate in outpatient treatment upon her release. Warden said that it was very likely BW would be adopted if Mary's rights were terminated and that he had no impediments to adoption. In addition, she said that the foster home BW had been in for the entirety of the case had expressed an interest in adopting him. Warden testified that BW was nineteen months old and had spent most of his life in foster care. She said that while Mary was not incarcerated, she attended ten visits and missed fifteen. Warden stated that giving Mary more time to get out of prison and establish stability would require BW to be in foster care in excess of two years. Warden, as well as the ad litem and CASA volunteer, recommended termination.

The circuit court entered an order terminating Mary's parental rights on July 16. A timely notice of appeal was filed July 31, 2021.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the child will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3). Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. *Id.* Our review is de novo. *Dunbar v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 472, 503 S.W.3d 821. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Norton v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 285. In resolving the clearly erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. 356.

In regard to the termination, counsel correctly asserts that there can be no meritorious challenge to the sufficiency of the evidence to support termination of Mary's parental rights.

6

Although the circuit court found four statutory grounds for termination, only one ground is necessary. Counsel addresses the court's finding that Mary had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life. Ark. Code. Ann. § 9-27-341(b)(3)(B)(viii). Although Mary testified that she might be released by the end of 2021, it is the prison sentence, not the potential release date, that determines whether the statutory ground is satisfied. *Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. 356.

In the present case, BW was less than three months old when he came into DHS custody on February 27, 2020. Mary was incarcerated from that time until May 2020. She was arrested again on December 5, 2020, and charged with drug possession. She entered a negotiated guilty plea in that case and was sentenced to thirty-six months' imprisonment and thirty-six months' SIS. She also pleaded guilty in three separate revocations and received the same sentences, with all the sentences to run concurrently. The case had been open for seventeen months at the time of the July 2021 termination hearing, at which time BW was only nineteen months old and had already spent all but approximately two months of his life in foster care, and Mary had only served approximately seven months of her thirty-six-month sentence. This amounts to a substantial portion of BW's life. *See, e.g., Sanford v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 578, 474 S.W.3d 503; *Hill v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 108, 389 S.W.3d 72. This ground supports termination, and any argument to the contrary would be without merit.

Counsel has also adequately explained why there is sufficient evidence to support the court's best-interest finding. Mary's caseworker presented uncontroverted testimony that BW is adoptable. She testified that it is very likely that BW would be adopted; BW has no physical, medical, or behavioral issues; and the foster home he has been in for the duration of the case had expressed an interest in adopting him. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *Cox v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 26. There would be no meritorious challenge to the adoptability factor.

Further, we agree with counsel that that any challenge to the potential-harm prong of the best-interest finding would be wholly frivolous. Potential harm must be viewed in a forward-looking manner and considered in broad terms. *Dowdy v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. In finding that there is significant potential danger to BW's health and safety should custody return to Mary, the court stated that the case began with Mary's incarceration on drug charges; Mary has a long history of drug addiction that has not been resolved; Mary attended inpatient drug treatment but continued to use methamphetamine; and Mary was arrested on possession charges while on parole. The court recognized Mary's testimony that she might be released by the end of 2021 but stated that under the best of circumstances, it would take Mary nine months to show stability and sobriety. On this record, it could not be meritoriously argued that there was insufficient evidence to support the circuit court's finding of potential harm.

Inasmuch as Mary's closing statement arguing that termination was not in BW's interest because she had a plan upon being released from prison could be interpreted as a

request for more time, such an argument would not be meritorious. The intent of the termination statute is to provide permanency in a child's life in all instances where the child cannot return to the family home, and it appears from the evidence that a return cannot be accomplished within a reasonable period of time as viewed from the child's perspective. *See* Ark. Code Ann. § 9-27-341(a)(3). By the time of the hearing, BW was nineteen months old and had been in foster care since he was two months old. And although Mary thought she might be released by the end of 2021, she had served less than twelve months of her thirty-six-month sentence and offered no evidence other than her testimony of her plan upon her release. A child's need for permanency and stability may override a parent's request for additional time to improve her circumstances. *Leonard v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 605, at 8, 377 S.W.3d 511, 517. This "wait-and-see" situation is the type of instability that the termination-of-parental-rights statute is designed to prevent. *Smith v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 368, at 12, 523 S.W.3d 920, 927. Living in a state of prolonged uncertainty is not in the child's best interest. *Id.* Therefore, the court court's denial of a potential request for more time under these circumstances would be without merit.

Beyond the termination decision, counsel has also adequately addressed four adverse evidentiary rulings. During the termination hearing, counsel objected to each of appellant's four sentencing orders being entered into evidence, arguing it was improper character evidence under Ark. R. Evid. 404(b). Rule 404(b) provides that evidence of crimes is not admissible to prove the character of a person in order to show that the person acted in conformity therewith but is admissible for other purposes. Here, the court overruled the

9

objections and allowed the orders to be admitted, finding that the orders went to the grounds for termination and were being offered for that purpose. Mary also testified without objection about the sentences she received in these cases. The admission of the sentencing orders would not be a meritorious ground for reversal.

Having examined the record and the brief presented to us, we have determined that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases, and we hold that the appeal is wholly without merit. Accordingly, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

VAUGHT and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.