Cite as 2023 Ark. App. 31

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-22-389

| | |
|---|---|
| TAYLOR HARRISON<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN<br>APPELLEES | Opinion Delivered February 1, 2023<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT, FORT<br>SMITH DISTRICT<br>[NO. 66FJV-20-337]<br><br>HONORABLE ANNIE HENDRICKS,<br>JUDGE<br><br>AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Taylor Harrison appeals the Sebastian County Circuit Court's termination of her parental rights to her two sons, Minor Child 1, born August 18, 2018; and Minor Child 2, born April 14, 2020. On appeal, Harrison argues that allowing her to leave the scheduled termination hearing after signing a voluntary consent to relinquish her parental rights and then proceeding to hold the termination hearing violated her due-process right to be heard and participate in the hearing and that the circuit court erred in failing to question her on the record to ensure that her consent was knowingly and voluntarily given. We affirm.[1]

---

[1]The children's father, Taniko Tyson, executed a voluntary relinquishment of his parental rights that was not revoked.

This case began on October 6, 2020, when the Arkansas Department of Human Services (DHS) was called to the Rest Inn in Fort Smith, Arkansas, to assess the safety of the minor children. The hotel room where Harrison and the children were staying had a strong odor of marijuana, and there was a meth pipe located near the television. Harrison tested positive for THC and methamphetamine, and she was arrested for possession of less than two grams of methamphetamine, two counts of third-degree endangering the welfare of a minor, and maintaining a premises for drug sales. DHS exercised a seventy-two-hour hold on the minor children and filed a petition for emergency custody, which was granted.

A probable-cause order was filed on November 2, continuing custody of the minor children with DHS. The circuit court noted that the children were in placement with Harrison's grandmother, Cathy Le, and that neither Harrison nor Tyson were to have contact with the children unless specifically approved by DHS.[2] The children were adjudicated dependent-neglected in an order filed on April 5, 2021, as the result of Harrison's substance abuse and parental unfitness; Harrison tested positive on the day of the adjudication hearing for amphetamines, methamphetamine, and THC.

A review order was filed on September 8 in which the circuit court found that Harrison continued to be an unfit parent; return of the minor children to her custody was

---

[2]The children were ultimately removed from Le's custody after Minor Child 2 suffered a near-lethal overdose of methamphetamine and other illegal drugs believed to have come from the water in a bong belonging to Harrison's mother, Kristy Lester. Le also allowed the minor children to stay with Tyson and his mother without DHS permission in a house that DHS deemed inappropriate for the children.

contrary to their welfare; she was not in compliance with the case plan and orders of the court; and she could not provide a safe home or meet the children's minimal needs. Specifically, the circuit court found that Harrison had not participated in any services offered to her; she had missed two drug-and-alcohol-assessment appointments and two court-ordered hair-follicle-testing appointments; she had not exercised regular visitation; she had not begun taking parenting classes; she had no housing of her own, staying instead with her mother or with friends; she had no employment and no driver's license; and she had pending criminal charges.

A permanency-planning order was entered on November 23 in which the circuit court noted that Minor Child 2 had tested positive through hair samples for amphetamines, methamphetamine, alprazolam, and THC on June 19; and for amphetamines, methamphetamine, and THC on July 21. Minor Child 1 tested positive on July 21 through a hair sample for methamphetamine. The circuit court changed the case plan to adoption, finding Harrison had not made significant or measurable progress; had not diligently worked toward reunification; has a continued history of substance abuse and criminal activity; had no stable or appropriate housing, income, or transportation; and had failed to comply with the case plan and court orders. The circuit court also specifically recounted the near-lethal illegal-drug overdose suffered by Minor Child 2 while in Le's custody, which led to the termination of that placement.

The attorney ad litem and DHS filed a joint petition for termination of parental rights on October 29. The grounds alleged pertaining to Harrison were twelve-month failure to

3

remedy, subsequent factors, and aggravated circumstances pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(a), (vii)(a), and (ix)(a)(3)(A) (Supp. 2021). The termination hearing was held on December 1, 2021. Harrison was incarcerated at that time and was transported to court from jail. Harrison and Tyson were both present in the courtroom prior to the termination hearing and executed voluntary consents to relinquish parental rights, waivers of notice, and entries of appearance. After meeting with her attorney, Shelton Sargent, and signing the consent, Harrison requested that she be allowed to leave prior to the commencement of the termination hearing, which was granted by the circuit court; Sargent remained for the hearing on Harrison's behalf. Tyson also left after signing his consent.

The termination hearing proceeded after Harrison and Tyson executed their consents to termination and left the premises. Katharine Stransky, the family service worker for the case until October 13, 2021, and Kaitlyn Miller, the family service worker who was assigned to the case after October 13, were the only two witnesses called by DHS. Stransky testified that the children had been taken into DHS custody when Harrison was arrested in October 2020; Harrison had not resolved the pending criminal issues from that incident; and she had been arrested three more times since the case had been opened. She stated that Harrison had checked into a residential treatment center but left after one week; had never completed drug treatment; had failed to keep four drug-and-alcohol-assessment appointments and at least one hair-follicle-testing appointment; had continued to test positive for illegal drugs during the case; had not completed parenting classes; had never had appropriate housing,

income, or transportation during the case; and had sporadic visitation with the children. Stransky opined that despite the services offered by DHS, Harrison's circumstances were worse at the time of the termination hearing than they were when the case began. She testified that the boys are adoptable and that neither Harrison nor Tyson is an appropriate parent for the children because they are incapable of making good choices to protect the boys.

Kaitlyn Miller testified that Harrison had made no progress during the six weeks she had been the caseworker, and she noted that Harrison was currently incarcerated. She agreed with Stransky that the children are adoptable and that they would be at risk of harm if they were returned to Harrison and Tyson.

At the close of the testimony, DHS requested that because Harrison and Tyson had signed consents to termination of parental rights on the day of the termination hearing, and that ground was not pleaded in the petition for termination of parental rights, that the pleadings be conformed to the proof of evidence, which the circuit court granted. The circuit court ruled that because Harrison and Tyson had executed relinquishments of parental rights, waivers of notice, and entries of appearance on the day of the termination hearing, the terminations would be voluntary if the consents were not withdrawn within the ten-day waiting period. However, the circuit court also ruled that in the event consent was withdrawn, there had been sufficient evidence presented to terminate Harrison's parental rights involuntarily as well on the grounds of twelve months failure to remedy the issues that caused removal; subsequent factors; and aggravated circumstances because there was little

likelihood that additional time or services would result in the return of the children to a parent. The circuit court found by clear and convincing evidence that it was in the children's best interest to terminate Harrison's and Tyson's parental rights because the children are adoptable and would be at risk of potential harm if returned to their parents.

After the termination hearing but before the ten-day waiting period had run, Harrison filed several documents attempting to withdraw her voluntary consent. The first document, dated December 3, 2021, and filed on December 8, stated that Harrison withdrew her consent to relinquish her parental rights because she wanted to be a part of her children's lives "regardless of how the court feels." The second document, dated December 9 and filed December 15, again stated that Harrison withdrew her consent to relinquish her parental rights; that her consent was not given voluntarily; that she did not understand that her parental relationship would be forever terminated; and that her attorney did not read the relinquishment to her or explain what it meant. Harrison further stated that she did not accept the court's findings as absolute and final, and she wanted to fire her attorney because he "completely misle[d] [her] throughout this whole case." The third document, dated December 10 and filed on December 16, again stated that Harrison wished to withdraw her consent, she did not accept the court's findings as absolute and final, her consent was not voluntarily given, she did not understand that her relationship as a parent would be "forever terminated," her attorney did not explain the extent of the relinquishment to her and she wished to fire him, and she wanted a new attorney and an opportunity to testify.

A hearing on Harrison's withdrawal of consent was held on February 9, 2022. Harrison was represented at this hearing by a new attorney, Deeanna Weimar. At the hearing, Harrison testified she understood that DHS and the ad litem were seeking termination of her parental rights and that Sargent had been her appointed counsel for the entire case before she asked to have him fired. She agreed that she had been in jail at the time of the termination hearing and that she was still incarcerated at the time of the February 9 hearing. Harrison stated that she understood that the December hearing was a hearing to terminate her parental rights. When asked if Sargent had reviewed the relinquishment-of-parental-rights document and had explained that it would be a voluntary termination if she signed the document, Harrison said that he had reviewed only the first paragraphs with her, and she had not read the entire document before signing it but had read it only after she had been transported back to jail. Harrison agreed that she had signed the consent on the day of the termination hearing and that she did not have any questions for her attorney at that time. She said she had not completely understood what she was signing, but she had not asked for additional time to review the document further, and she did not know that she had a choice to stay for the termination hearing. Harrison stated that she had asked Sargent if she could still have visitation and pictures of the children and if the adoptive parents would agree to having an open adoption when she was released from jail; Sargent told her he would ask, but he did not guarantee it.

Weimar questioned Harrison, asking if she understood what "revoked" meant and if she still wanted to revoke her relinquishment of parental rights; Harrison said yes, she

wanted to take back her consent. Weimar asked Harrison if she understood that the circuit court had already held a termination hearing and that if she withdrew her consent, her rights would most likely be terminated involuntarily. Harrison stated that she wanted the court to accept the withdrawal of her consent, and she understood that an involuntary termination might have a negative effect on any future children she might have.

Sargent testified that not only did he explain the relinquishment-of-parental-rights form to Harrison, he also explained the consequences of signing it and not signing it. He said Harrison initially said she could not sign the consent and wanted to have a hearing, but when she learned Tyson had signed his consent, she decided she would sign her consent as well. Sargent testified that he told Harrison she could stay for the termination hearing or she could leave, and she chose to leave and return to jail. He stated that he had made no promises to Harrison, that he explained the consent to her, and that from his perspective, he had no reason to think her consent was anything other than knowingly and voluntarily given.

DHS conceded that Harrison's revocation of consent was timely filed, although it questioned the exact form of the withdrawal, but there was no objection by either DHS or the attorney ad litem to allowing Harrison to withdraw her consent. In the termination order, the circuit court noted Harrison had withdrawn her consent, and her parental rights were involuntarily terminated on the grounds of twelve months failure to remedy, subsequent factors, and aggravated circumstances.

Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the children. *Collier v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 100, 641 S.W.3d 67. We review termination-of-parental-rights cases de novo, but we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Isom v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 159. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, due deference is given to the circuit court's opportunity to judge the credibility of witnesses. *Gascot v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 57.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the children. *Williams v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 162. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juveniles will be adopted and of the potential harm caused by returning custody to the parent. *Id.* Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. *Id.*

Harrison first argues that the circuit court erred in proceeding to hold the termination hearing after allowing her to leave the termination hearing and return to jail after signing the consent because it violated her due-process right to be heard and participate in the

9

hearing. This argument is not preserved for appellate review. Harrison never made her due-process argument to the circuit court, and this court will not consider arguments raised for the first time on appeal, even in termination cases. *Kugler v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 485, 656 S.W.3d 1.

Harrison next argues that the circuit court erred in failing to question her on the record to ensure that her consent was knowingly and voluntarily given. This argument is also being raised for the first time on appeal and is therefore not preserved for appellate review. *Id.* Nevertheless, this issue is moot. Generally, an issue is considered moot if a judgment or opinion issued by the court would have no practical effect upon a then existing legal controversy. *Hemp Health, LLC v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 193, 644 S.W.3d 829. We do not render advisory opinions, and an opinion issued on a moot issue would be advisory. *Id.* It does not matter if Harrison's consent was knowingly and voluntarily given because she was allowed to withdraw it. Harrison's parental rights were involuntarily terminated, and she makes no argument on appeal that the evidence presented at the termination hearing was insufficient to support the grounds found by the circuit court for involuntary termination.

Affirmed.

KLAPPENBACH and MURPHY, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Marc D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.