Cite as 2024 Ark. App. 66

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-578

| | |
|---|---|
| CHRISTIAN LEWIS<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered January 31, 2024<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26JV-21-290]<br><br>HONORABLE LYNN WILLIAMS, JUDGE<br><br>AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Christian Lewis appeals after the Garland County Circuit Court filed an order terminating his parental rights to his son, Minor Child (MC1) (DOB 01-06-21).[1] Appellant generally argues on appeal that the termination order must be reversed because there was "a complete lack of due process" afforded to him. We affirm.

I. *Relevant Facts*

On November 1, 2021, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect asking the circuit court to find MC dependent-neglected and to place him in DHS's custody. In the affidavit attached to the

---

[1]The termination order additionally terminated the parental rights of Stefanie Culliver, MC's mother. However, she is not a party to this appeal.

petition, DHS stated that MC was removed from his mother's physical and legal custody on October 28, 2021. Appellant was identified as MC's putative father. The affidavit explained that, although there had been a previous paternity suit filed, it had been dismissed without proof of paternity being established. The affidavit further outlined the long history that DHS had with this family dating back to 2019. On October 6, 2021, an investigation was opened after a search warrant was executed in a hotel room that was occupied by appellant, Ms. Culliver, and MC due to allegations that the room contained stolen property. Boxes of stolen property, methamphetamine, and drug paraphernalia were found in the room. Methamphetamine, residue, pipes, scales, and baggies were accessible to MC. Appellant was arrested, and DHS referred Ms. Culliver to Harbor House for inpatient drug treatment due to her admitted methamphetamine use. Thereafter, it was reported that MC had to be treated for burn injuries at Arkansas Children's Hospital on October 27, 2021, and Dr. Farst reported that Ms. Culliver's and appellant's explanation for the injuries was inconsistent with the injuries themselves. It was after this report that DHS removed MC from Ms. Culliver's physical and legal custody.

The circuit court granted the petition, finding that probable cause existed, and a probable-cause order was filed on November 3, 2021. Thereafter, an adjudication order was filed on January 24, 2022, finding MC dependent-neglected. Ms. Culliver stipulated to the adjudication, and the circuit court specifically found that MC was at substantial risk of serious harm from abuse, neglect, and parental unfitness. Appellant was listed as MC's putative parent but did not attend the hearing. The circuit court found that appellant had

2

been properly served and explained that, although appellant's rights as a putative parent had attached, appellant had not provided evidence to establish paternity. The circuit court set the goal of the case as reunification with a concurrent goal of relative or fictive-kin placement. Appellant was ordered to participate in DNA testing to establish paternity, and both parents were ordered to do the following:

> to complete a drug/alcohol assessment and follow any recommendation; to submit to random drug screens immediately upon request; to submit to hair follicle screening upon request; to participate in individual therapy; to submit to a psychological evaluation and follow any recommendation; to participate and attend all visitation scheduled with the juvenile; to complete parenting education; to schedule and keep all appointments; to obtain and maintain a safe, suitable, and appropriate home for self and the juvenile; to maintain an environment free from illegal substances and other health/safety hazards; to obtain and maintain adequate income to support self and the juvenile; to request assistance for transportation from the Department forty-eight (48) hours in advance; to cooperate with the Department; to permit the Department to inspect the home; to participate in any service as may be requested by the Department; to maintain consistent contact with the juvenile; to demonstrate stability and the ability to provide for the health, safety, and welfare of the juvenile; to maintain consistent contact with the Department; and to keep the Department informed of a current address.

A review hearing was held on April 13, 2022, and an order was filed on April 21, 2022. Appellant was again listed as a putative parent, but he did not attend the hearing. The circuit court continued the goals set in the adjudication order. It found that neither parent had complied with the case plan. Ms. Culliver had absconded from parole since the last hearing, and appellant had remained in jail for pending criminal charges since the last hearing.

A second review hearing was held, and an agreed review order was filed on July 26, 2022. The circuit court again continued the goals set in the adjudication order. It found

3

that neither parent had complied with the case plan. Ms. Culliver had been arrested and remained incarcerated, and appellant had pled guilty to his pending criminal charges and was sentenced to incarceration in the Arkansas Department of Correction since the last hearing. The circuit court found that neither parent had demonstrated any progress toward the goal of the case plan.

A permanency-planning hearing was held on October 26, 2022, and a permanency-planning order was filed on November 3, 2022. The circuit court changed the goal to termination of parental rights and adoption. It noted that both parents were incarcerated.

DHS thereafter filed a petition for the termination of parental rights on December 14, 2022, specifically alleging that appellant's parental rights should be terminated on the statutory grounds of failure to remedy, failure to maintain contact, abandonment, sentenced in a criminal proceeding for periods of time that would constitute a substantial period of MC's life, and failure to establish paternity or significant contacts after receiving notice of a dependency-neglect proceeding. *See* Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2023).

Appellant's termination hearing was held on May 31, 2023.[2] Appellant was represented by appointed counsel and was present via "Justice Bridge." Jamie Moran, the DHS supervisor for the case, testified that since the last hearing, she received DNA testing results showing that there is a 99.9 percent chance that appellant is MC's biological father.

---

[2]We note that Ms. Culliver's termination hearing was held on April 5, 2023. At that time, the circuit court heard testimony regarding the termination of her parental rights. However, it held any ruling in abeyance until after the May 31, 2023, hearing.

4

She also testified that appellant was currently incarcerated after he had been sentenced to serve six years' imprisonment. She explained that appellant had been arrested just prior to MC's removal and that appellant had been incarcerated throughout the pendency of this case. Ms. Moran additionally testified that she was aware that there was a no-contact order in place as a result of appellant's criminal case that prohibits any contact between appellant and MC. With both parents incarcerated, Ms. Moran stated that it was her opinion that the termination of parental rights was in MC's best interest to allow him to achieve some permanency.

On cross-examination, Ms. Moran admitted that she had not had any contact with appellant during the pendency of the case because he had been incarcerated and was just found to be MC's father. She explained that DHS had not been able to offer appellant any services while he was incarcerated, but she stated that DHS had been ready and willing to do so once he was released. She also acknowledged that DHS had sent pictures of MC to appellant. Ms. Moran testified that she was not aware of appellant completing any services that were offered by the jail.

Susan Miller, a DHS adoption specialist, testified that there were 261 potential adoptive matches for MC. She additionally testified that MC's current foster placement was also interested in adopting him.

Finally, appellant testified on his own behalf. Appellant admitted that he had been incarcerated since the beginning of this case. He further admitted that he had not "tried to reach out" to DHS. That said, he stated that he had more recently asked for pictures of MC

through his attorney. Appellant further explained that he recently was denied his request for parole, but he stated that he had mailed a letter asking for reconsideration of that decision. Appellant testified that although he has had no contact with MC, he had wanted contact with him and did not want his parental rights terminated.

In closing arguments, counsel for DHS argued that there were not any services that DHS could offer appellant that would allow MC to be reunited with appellant due to appellant's incarceration and the permanent no-contact order that was in place prohibiting appellant from having any contact with MC.

Appellant's counsel argued that he did not think DHS had met its burden to prove statutory grounds. He explained that appellant had just been found to be MC's biological father and that DHS had not offered appellant any services. Although counsel acknowledged that appellant had been sentenced to a criminal proceeding and that appellant had been denied parole, counsel stated that if appellant was granted his request for reconsideration and was released, appellant could then build a relationship with MC at that point. As such, counsel asked that the circuit court deny DHS's petition for termination of parental rights.

In reply, counsel for DHS argued that it was irrelevant when appellant would be eligible for parole in order to prove the statutory ground that appellant had been sentenced in a criminal proceeding for periods of time that would constitute a substantial period of MC's life. He reiterated that appellant had been sentenced to serve six years' imprisonment on July 12, 2022, and he opined that this was a substantial period of MC's life.

At the conclusion of the termination hearing, the circuit court orally ruled from the bench that it was granting DHS's petition for termination of parental rights. The circuit court filed a written order terminating appellant's parental rights on June 6, 2023, and made the following relevant findings:

> 2. All parties have received proper service and notice of this proceeding, with due notice of this proceeding having been provided to the parents pursuant to Arkansas Rules of Civil Procedure and ARK. CODE ANN. § 9-27-341(b)(2). Specifically, the Department served the parents by delivery to their attorneys, pursuant to ARK. R. CIV. PRO. 5.
>
> . . . .
>
> 5. The father, Christian Lewis, is a parent because he is the biological father of the juvenile. He is adjudicated as the father of the juvenile.
>
> 6. The Court entered into evidence: the Department's court report (Petitioner's Ex. 1); DNA results showing Christian Lewis is the father of [MC] (Petitioner's Ex. 2); and certificates of programs the mother has completed in prison (Defendant Mom's Exhibits 1–9).
>
> 7. The Court received testimony from Jamie Moran (case worker supervisor) and Susan Miller (adoption specialist) with the finding that the testimony of these witnesses was credible. The Court also received testimony from the father, Christian Lewis.
>
> 8. After considering the evidence, the Court finds that the evidence proves the following grounds:
>
> a. The juvenile has been adjudicated by the Court to be dependent neglected and has continued out of the home of the parents for more than twelve (12) months and, despite a meaningful effort by the Department to rehabilitate the parents and correct the conditions that prevented the juvenile from being safely placed in the parents' home, those conditions have not been remedied by the parents.
>
> 9. In support of the above-listed grounds, the Court finds the following facts:

a.     The juvenile was adjudicated dependent-neglected on January 5, 2022, on the grounds that the juvenile was at substantial risk of harm due to abuse, neglect, and parental unfitness.  Specifically, the juvenile has an injury that was at variance with the history given and also tested positive for methamphetamines at the time of the removal.  The parents admitted to recent methamphetamine use.

b.     The conditions that prevent the juveniles from being safely placed in the mother's home have not been remedied; specifically, the mother is still incarcerated at this time.  Prior to her incarceration, she completed no services.  There are no additional services the Department could provide to the mother.

c.     Both parents have been sentenced in criminal proceedings for a period of time that would constitute a substantial period of the juvenile's life.  On October 17, 2022, the mother was sentenced to 60 months in the Arkansas Department of Human Services.  Although she believes she will be paroled within the next 30 days, she testified that she intends to be paroled to Florida to an environment that would not be safe for the juvenile.  As to the father, on July 12, 2022, he has been sentenced to 72 months in the Arkansas Department of Corrections and testified that his request for parole was recently denied.  There is a no contact order preventing contact between the parents and the juvenile.

d.     The Court repeatedly found that the Department had made reasonable efforts to provide services to the family to rectify the situation that caused removal and to correct the conditions that prevented the juvenile's return to the mother's care.

e.     This Court finds there is little likelihood that services to the family will result in successful reunification as there is no other service that could be provided to the parents that has not already been provided or offered.

10.     The Court also finds that the evidence proves the termination of parental rights is in the best interest of the juvenile.  In making this finding, the circuit court considered all relevant factors, including the likelihood that the juvenile would be adopted if the parental rights were terminated, and the potential harm, specifically addressing the effect on the health and safety of the juvenile, that could be caused by returning the juvenile to the parents.

a.     As to the juvenile's adoptability, the Court finds that the juvenile is adoptable because there are 261 families interested in adopting a juvenile who shares characteristics with this juvenile, and the current foster placement is interested in adopting the juvenile.

8

b.    As to potential harm, the Court finds that the juvenile would be subjected to potential harm if returned to the parents because there is no evidence that there has been any substantial change in parents' situation since the removal. This case has been open for 19 months, and it is still not possible to place the juvenile with the parents due to their incarceration and the no contact order. The parents have completed no services. Even when the mother was not incarcerated, she completed no services. The facts supporting the grounds for termination of parental rights also demonstrate how the juvenile would be at risk of harm if returned to the parents.

11.    The Court, therefore, grants the Department's petition and terminates all parental rights between Stefanie Culliver and Christian Lewis as to the juvenile . . . pursuant to ARK. CODE ANN. § 9-27-341.

(Footnotes omitted.)  This appeal followed.

## II.  *Standard of Review*

A circuit court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a

9

finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.* Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*

III. *Analysis*

On appeal, appellant does not challenge that there was sufficient evidence to prove that termination of parental rights was in MC's best interest or that there was at least one statutory ground that supported termination. Instead, appellant generally argues on appeal that the termination order must be reversed because there was "a complete lack of due process" afforded to him. More specifically, he argues that "[i]t was error for the circuit court to terminated [his] parental rights under the facts of this case which demonstrate that DHS failed to secure [his] participation in the hearings, provide court orders, or make any attempt to enable [him] to participate in the case." He alleges for the first time on appeal that he "was not provided with a single order prior to the termination hearing." As such, he complains that he was denied a "meaningful opportunity to participate in the process concerning his parental rights . . . prior to the termination hearing" and that he did not know "what he was directed to complete." He further complains that he had not been appointed an attorney to represent him during the adjudication hearing and throughout the remainder of the case until just before the termination hearing. Appellant blames DHS for failing to offer him services and assist him in establishing his paternity sooner. In summary, appellant claims that the termination of his parental rights must be reversed because he was not afforded due process.

However, we are unable to reach the merits of appellant's due-process arguments because he is raising these arguments for the first time on appeal and failed to obtain a ruling on them by the circuit court. *Reynolds v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 287;

11

*Harrison v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 31; *Hutchins v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 392, 674 S.W.3d 765; *Scott v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 494; *Chacon v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 277, 600 S.W.3d 131. We will not consider arguments made for the first time on appeal, even constitutional arguments, because doing so deprives the circuit court of the opportunity to fully develop the issue. *Reynolds*, *supra*; *Harrison*, *supra*. Accordingly, appellant's arguments are not preserved for our review.

Nevertheless, even if appellant's arguments had been preserved, they lack merit. Although appellant claims that the facts of this case are analogous to those in *Tuck v. Arkansas Department of Human Services*, 103 Ark. App. 263, 288 S.W.3d 665 (2008), we disagree and reject his arguments for the same reasons we discussed in *Sills v. Arkansas Department of Human Services*, 2018 Ark. App. 9, 538 S.W.3d 249. In *Tuck*, the parent was not made a party to the case and had no right to participate before the termination. However, here, and as in *Sills*, appellant was a named party and was made aware of the DHS action when he was served on November 17, 2021, pursuant to Arkansas Code Annotated section 9-27-325 and Arkansas Rule of Civil Procedure 4. Despite knowing of the open dependency-neglect case, appellant failed to stay apprised of the progress or inquire into what was necessary to maintain his parental rights. Ultimately, he was appointed counsel and appeared at the termination hearing with the benefit of counsel. As such, we are not convinced that appellant was denied fundamentally fair procedures as discussed in *Tuck*.

Admittedly, appellant was not represented by counsel until the petition to terminate had been filed. However, the circuit court did not commit error in this regard. Under the juvenile code, appellant had a right to be represented by counsel at all stages of the proceedings. Ark. Code Ann. § 9-27-316(h)(1)(A) (Supp. 2023). However, the circuit court has a statutory duty to appoint counsel for parents in dependency-neglect proceedings only if the parent is indigent and is also the parent or custodian from whom custody was removed. Ark. Code Ann. § 9-27-316(h)(1)(B); *see also Sills, supra.* Here, appellant was not a parent "from whom custody was removed," and he was not entitled to *appointed* counsel under the statute before the process moved to termination of his rights. Ark. Code Ann. § 9-27-316(h)(1)(E). Moreover, even if the court had erred in failing to appoint counsel sooner, we have held that any "failure" to appoint counsel at early stages of the dependency-neglect process is harmless if the parent has an attorney before the termination hearing. *Sills, supra.*

Finally, appellant's arguments that he was denied due process because DHS never made any effort to provide him with services or assist him with establishing paternity sooner also lack merit. Under the sentenced-in-a-criminal-proceeding ground, DHS is not required to provide services to a parent while he or she is in prison as a prerequisite to termination or to contemplate what it will do when the parent is released. *Id.* Because DHS did not have to provide services pursuant to the ground on which it sought to terminate appellant's parental rights, his argument fails. Moreover, it was appellant's burden to establish paternity under these circumstances. *See Gabel v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 489, 656 S.W.3d 8. Thus, we affirm the order terminating appellant's parental rights.

13

Affirmed.

HARRISON, C.J., and ABRAMSON, J., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.